CANNAVINO & SHEA, INC. *vs.* WATER WORKS SUPPLY CORP.

Worcester. February 9, 1972. — March 7, 1972.

Present: CUTTER, SPIEGEL, REARDON, QUIRICO, & BRAUCHER, JJ.

*Contract*, What constitutes. *Sale*, Contract of sale.

In an action by a general contractor, who had been the successful bidder on a contract to furnish and lay water mains for a municipality, against a supplier of materials to recover the difference between the price of butterfly valves, as quoted by the defendant in a letter sent by him to the plaintiff and other potential general contractors four days before bids were to be received, and the higher price of such valves having a worm gear feature, as required by the general contract specifications issued by the municipality but omitted from the detailed specifications, where the defendant knew that the price of butterfly valves, as quoted in the letter along with the prices of at least fifty other items, did not include the worm gear feature but the plaintiff, ignorant of that fact, submitted a bid in reliance upon the defendant to supply the proper materials and thereafter had to purchase conforming valves at a higher price, it was held that the defendant's letter was not an offer, firm or otherwise, but a quotation of prices with a request that an offer be made and, since no offer was made, the judge rightly directed a verdict for the defendant. [366]

CONTRACT. Writ in the Superior Court dated July 13, 1970.

The action was tried before *Beaudreau, J.*
*David A. Talman* for the plaintiff.
*James F. Queenan, Jr.,* for the defendant.

BRAUCHER, J.   This action of contract is before us on
the plaintiff's exception to the allowance of the defend-
ant's motion for a directed verdict.   The trial judge
stated that "there was never any acceptance by" the
plaintiff.   We summarize the evidence most favorable to
the plaintiff.

The town of Springfield, Vermont (the town), issued a
"Contract Document for Furnishing and Laying Water
Mains" and called for bids to be opened at 2 P.M. on May
8, 1970.   The general specifications in the contract docu-
ment required that butterfly valves have "operators . . .
of the enclosed worm gear type," but this requirement
was omitted from the detailed specifications.

The defendant, a supplier of materials, on May 4, 1970,
sent to the plaintiff and twenty-one other possible gen-
eral contractors a document entitled "Quotation," refer-
ring to "Springfield Vermont Contract C Water Main" as
the "Job Name," and stating "Delivery: As Required;
Terms: Net 30 Days."   The body of the quotation con-
sisted of a list of more than fifty items of materials, one
of which was "34 12″ Mechanical Joint Dresser #450
Butterfly Valves With Boxes" at a unit price of $250.75.
The list was based on the contract document, and the
defendant knew that general contractors relied upon it to
refer to materials complying with the specifications.   As
the defendant knew but the plaintiff did not, the type of
valve described in the quotation did not have an "en-
closed worm gear operator," although it could be modi-
fied to contain one for about $50 a valve.

Relying upon the defendant to supply complying mate-
rials, the plaintiff submitted a bid including thirty-four
twelve-inch butterfly valves at $310 a valve.   About two
and one-half hours before the bid opening, a representa-
tive of the town informed the defendant that its valves

did not comply with the specifications because they did not contain enclosed worm gears. The plaintiff was awarded the general contract at the bid opening, and thereafter learned for the first time that the valves were noncomplying.

The plaintiff made several phone calls to the defendant for the purpose of accepting the defendant's bid to supply valves, if acceptable to the town's engineer, but no oral acceptance took place during these calls. The defendant's sales manager did not return the calls because the defendant had determined several months before not to solicit business from the plaintiff. In a conversation on the street about a week after the bid opening the plaintiff's office manager expressed to the defendant's salesman a desire to buy the valves from the defendant if they were approved by the town's engineer. The defendant's salesman knew of the defendant's policy not to solicit business from the plaintiff but said he did not know why the plaintiff's calls were not returned.

The plaintiff bought conforming valves from another supplier at a higher price, and on June 25, 1970, the plaintiff's attorney sent the defendant a letter demanding payment of the difference. On September 22, 1970, the defendant wrote to the plaintiff revoking the quotation, "Inasmuch as we have received no order or acceptance to date for any item contained in the quotation and the item" of thirty-four valves "was specifically rejected by your attorney's letter dated June 25, 1970."

The plaintiff contends that the defendant's quotation could be found to be an offer to sell complying valves, qualifying as a "firm offer" under G. L. c. 106, § 2–205, and that the plaintiff could be found to have accepted the offer by its course of conduct in trying to reach the defendant's sales manager and conversing with the defendant's salesman, citing G. L. c. 106, §§ 2–204 (1), 2–206 (1) (a), and 2–207 (3). It also suggests in oral argument that the defendant is bound by estoppel, citing *Crane Co.* v. *Park Constr. Co. Inc.* 356 Mass. 13, 17. See Restatement

2d: Contracts (Tent. draft No. 2, April 30, 1965) § 89 B (2), and illustration 6. Compare *Union Tank Car Co.* v. *Wheat Bros.* 15 Utah 2d, 101, 104–105.

We need not pass on these contentions, since we think there was no evidence that any offer, firm or otherwise, was made by the defendant. The defendant's letter of May 4, 1970, was not an offer but a quotation of prices, a request or suggestion that an offer be made to the defendant. *Smith* v. *Gowdy*, 8 Allen, 566, 567. *Mellen* v. *Johnson*, 322 Mass. 236, 238–239, and cases cited. *Kuzmeskus* v. *Pickup Motor Co. Inc.* 330 Mass. 490, 493. Restatement 2d: Contracts (Tent. draft No. 1, April 13, 1964) § 25, and comment c. The defendant's subsequent references to acceptance and rejection of an "item," although they might help to resolve an ambiguity, could not convert a price circular into a collection of offers.

*Exceptions overruled.*