LORANGER CONSTRUCTION CORPORATION *vs.* E. F. HAUSERMAN COMPANY.

Bristol.　October 14, 1977. — March 23, 1978.

Present: KEVILLE, GRANT, & BROWN, JJ.

*Estoppel.*

Discussion of the doctrine of promissory estoppel. [154–157]

Where the defendant subcontractor quoted a price for supplying and installing metal partitions to the plaintiff, knowing that the plaintiff, as general contractor, might use this price in bidding on a construction contract and where the plaintiff used the quoted price in submitting its successful bid and subsequently the defendant refused to execute a subcontract, the defendant was liable to the plaintiff on a theory of promissory estoppel for the difference between the quoted price and that paid by the plaintiff to another company engaged to supply and install the partitions. [157]

In an action by a general contractor against a manufacturer of metal partitions seeking damages for the manufacturer's refusal to execute a subcontract in accordance with a price quoted by the manu-

facturer and used by the contractor in its successful bid for the contract, the contractor's delay of two and one-half months after award of the general contract before notifying the manufacturer that its subbid was accepted did not preclude, as matter of law, recovery against the manufacturer on a theory of promissory estoppel. [157–158]

CONTRACT AND TORT. Writ in the Superior Court dated December 19, 1969.

Following the decision of this court in 1 Mass. App. Ct. 801 (1973), the case was tried before *K. Smith*, J.

*James M. Cronin* for the defendant.

*Paul G. Murphy* for the plaintiff.

KEVILLE, J. The plaintiff-appellee (Loranger) is a general contractor. The defendant-appellant (Hauserman) manufactures movable metal partitions. On May 20, 1968, Loranger was preparing a bid for a contract to construct buildings for a community college. A sales engineer employed by Hauserman, knowing of Loranger's plan to bid on the general contract, telephoned Loranger and quoted a figure of $15,900 for supplying and installing the metal partitions. The quotation was based upon plans and specifications of the buildings which the engineer felt were a sufficient basis for the quotation. Hauserman's was the sole bid for the partition work; and Loranger included the $15,900 figure in its bid for the general contract submitted on that day, May 20, 1968.

On June 21 or June 26, 1968, Loranger was awarded the general contract. On September 12, 1968, Loranger forwarded to Hauserman an unsigned subcontract form based upon the $15,900 figure. The parties stipulated that no employee of Loranger had communicated with any employee of Hauserman subsequent to Hauserman's telephone quotation until September 12 when the subcontract form was mailed to Hauserman. On October 24, 1968, Hauserman, from its New York offices, informed Loranger that it rejected the subcontract. Loranger then engaged another company to supply and install the partitions for $23,000. This action was brought by Loranger to

recover $7,100, the difference between Hauserman's quoted price and that paid by Loranger to the substituted subcontractor for the partitions. The jury returned a verdict for Loranger in that amount.

Loranger's complaint was in four counts, all save count 1 were subsequently waived. In count 1 of its amended complaint, Loranger alleged that Hauserman's telephone quotation on May 20 was an offer which Loranger accepted and relied upon in submitting its general bid. In count 4 Loranger alleged that Hauserman's quotation was an offer which was accepted by Loranger after Loranger's bid on the general contract had been accepted. Count 4, which rested upon an alleged acceptance by Hauserman *after* the award of the general contract in June, was waived by Loranger at trial. Consequently, Loranger cannot successfully argue for recovery on that basis. *Goldsmith* v. *Traveler Shoe Co.*, 236 Mass. 111, 113–114 (1920). *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 598–599 (1952). With respect to count 1, Loranger does not assert, nor does the evidence demonstrate, that any action taken by it prior to the award of the general contract in June constituted an acceptance by Loranger. Thus Loranger is foreclosed from recovery on any traditional contract theory. However, we hold that Loranger is entitled to recover on the theory of promissory estoppel, a basis for recovery not previously explicitly accepted in the courts of this Commonwealth.

The theory of promissory estoppel, as embodied in the Restatement of Contracts § 90 (1932), permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise. See *Janke Constr. Co.* v. *Vulcan Materials Co.*, 527 F.2d 772, 777 (7th Cir. 1976). Simpson, Contracts § 61, 118 (1965). Boyer, Promissory Estoppel: Requirements and Limitations of the Doctrine, 98 U. Pa. L. Rev.

459, 460 (1950). Initially, courts were reluctant to allow recovery based upon promissory estoppel, and application of the theory was limited to such areas as reliance placed by charities upon promised donations. 1 Williston, Contracts § 140, at 609 (3d ed. 1957). Annot., 48 A.L.R.2d 1069, 1078, 1081 (1956), 1A Corbin, Contracts § 198, at 204 (1963). Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343, 350 n.29 (1969). However, application of the theory has been expanded more recently to cover disputes arising in commercial transactions (1 Williston, Contracts § 140, at 610 [3d ed. 1957]; Calamari & Perillo, Contracts § 6–8, at 211 [2d ed. 1977]; see, e.g., *Janke Constr. Co.*, 527 F.2d at 772–776; *Drennan* v. *Star Paving Co.*, 51 Cal. 2d 409 [1958]; *Hoffman* v. *Red Owl Stores, Inc.*, 26 Wis. 2d 683, 686–690 [1965]), and refusal to apply the doctrine to commercial transactions has been the subject of criticism. Boyer, *supra* at 492–493.

Courts of this Commonwealth have of course applied the traditional doctrine of equitable estoppel. *Calkins* v. *Wire Hardware Co.*, 267 Mass. 52, 68–69 (1929). *Looney* v. *Trimount Theatres, Inc.*, 282 Mass. 275, 277–278 (1933). That doctrine differs from promissory estoppel primarily in that equitable estoppel permits recovery only where there has been reliance upon the misrepresentation of past or present facts whereas recovery may be had under the theory of promissory estoppel where reliance has been placed upon statements of future intent. 1 Williston, Contracts § 140, at 611–615 (3d ed. 1957). Calamari & Perillo, Contracts § 6–6, at 209 (2d ed. 1977). *Langdon* v. *Doud*, 10 Allen 433, 436–437 (1865). While Massachusetts has not accepted the theory of promissory estoppel by name, its underlying principles have in effect been applied to reach equitable results and our courts have applied the theory of estoppel to representations of future intent. See *McLearn* v. *Hill*, 276 Mass. 519, 526–527 (1931);[1] *Baglio* v. *New York Central R.R.*, 344 Mass. 14,

[1] In *McLearn* v. *Hill*, the defendant was estopped from pleading the statute of limitations where the plaintiff had relied upon the defend-

19–20 (1962). Compare *Antonelli Constr. Co.* v. *Aetna Cas. & Sur. Co.*, 354 Mass. 465, 468 (1968). In *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722 (1974), *S.C.* 368 Mass. 811 (1975), a contract was held to be enforceable where the defendant's agent gave false assurances, upon which the plaintiff relied, that a contract would be approved by the defendant.[2]

Massachusetts has in effect applied the theory of promissory estoppel in cases involving charitable subscriptions. Most cases allowing recovery where a charity has relied upon the promise of a donation purport to find consideration by the charity for the promise. *Trustees of Amherst Academy* v. *Cowls*, 6 Pick. 427, 432 (1828). *Ladies' Collegiate Inst.* v. *French*, 16 Gray 196, 201 (1860). However, those cases appear to have elasticized the concept of consideration for in essence they amount to enforcement of gratuitous promise upon which a charity relied to its detriment. 1A Corbin, Contracts § 198, at 207–210 & n.21 (1963). Henderson, *supra* at 354. Boyer, *supra* at 472–473. See *Martin* v. *Meles*, 179 Mass. 114, 116 (1901). An approach similar to that taken in the charitable subscription cases has been followed in commercial settings. *Id. Sherwin* v. *Fletcher*, 168 Mass. 413, 415 (1897). *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. at 729. Elasticizing traditional approaches, rather than openly adopting the theory of promissory estoppel in appropriate instances, has led to some confusion. Henderson, *supra* at 377 n.188. 1 Williston, Contracts § 140, at 607–609 (3d ed. 1957).

---

ant's implicit assurance that he would not assert that defense. See Dawson, Estoppel and Statutes of Limitation, 34 Mich. L. Rev. 1, 3 (1935).

[2] In *Cellucci*, this court stated that "[a]lthough as a general rule representations as to future events are not actionable . . . , an exception has been recognized 'where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the representations relate.'" 2 Mass. App. Ct. at 730.

Our acceptance of the theory of promissory estoppel follows a trend established elsewhere and has the approval of authoritative comment. *Drennan* v. *Star Paving Co.*, 51 Cal. 2d at 414–415. *Constructors Supply Co.* v. *Bostrom Sheet Metal Works, Inc.*, 291 Minn. 113, 114–118 (1971). *E.A. Coronis Associates* v. *M. Gordon Constr. Co.*, 90 N.J. Super. 69, 76–77 (1966). *Hoffman* v. *Red Owl Stores, Inc.*, 26 Wis. 2d at 694–696. See 1 Williston, Contracts § 140 (3d ed. 1957). Boyer, *supra* at 494–498.

Application of the theory is appropriate upon the facts presented by this appeal. Hauserman submitted its bid knowing that Loranger might use that figure in its general bid. Hauserman realized that if that figure were used and Loranger were awarded the general contract, Loranger would be bound by its bid price. Because Hauserman reneged, Loranger was forced to pay a higher price to another subcontractor. The jury could have found that Loranger had relied upon Hauserman's figure, that the reliance was reasonable, and that injustice could be avoided only by the imposition of appropriate damages.

The theory of promissory estoppel has been invoked by courts of several other jurisdictions on similar facts. *Drennan* v. *Star Paving Co.*, 51 Cal. 2d 409 (1958), the leading case, held a subcontractor liable to a general contractor who had relied upon the subcontractor's bid. Subsequent California decisions and those of other jurisdictions have relied upon *Drennan* in applying the theory where a general contractor had reasonably relied to its detriment upon a subcontractor's bid. *Debron Corp.* v. *National Homes Constr. Corp.*, 493 F.2d 352, 357–358 (8th Cir. 1974). *Norcross* v. *Winters*, 209 Cal. App. 2d 207, 218–220 (1962). *H. W. Stanfield Constr. Corp.* v. *Robert McMullan & Son*, 14 Cal. App. 3d 848, 852–853 (1971). *Constructors Supply Co.* v. *Bostrom Sheet Metal Works, Inc.*, 291 Minn. at 114–118. *E. A. Coronis Associates* v. *M. Gordon Constr. Co.*, 90 N.J. Super. at 72–76. See Boyer, *supra* at 493.

Two principal arguments are advanced by Hauserman against the application of promissory estoppel in the

present case. It asserts that Loranger unreasonably delayed in notifying Hauserman that its subbid had been "accepted," and that evidence of "bid shopping" by Loranger, after it used Hauserman's figure in its general bid, precluded recovery.

A general contractor seeking recovery from a subcontractor based upon promissory estoppel may not, in the hope of getting a better price, unreasonably delay its attempted acceptance of a subbid. See *Debron Corp.*, 493 F.2d at 358; *Drennan*, 51 Cal. 2d at 415; *Norcross*, 209 Cal. App. 2d at 218; *H. W. Stanfield Constr. Corp.*, 14 Cal. App. 3d at 852–853. Such a delay presents the possibility of fluctuation in price to the advantage of a general contractor and to the detriment of a subcontractor. We have found no case dealing with a delay in attempted acceptance for as long as two and a half months, the timespan in the present case. But there has been no showing of prejudice to Hauserman occasioned by the delay, and no showing that the delay was so long as to be unreasonable as matter of law. Compare *Mowles* v. *Boston Ins. Co.*, 226 Mass. 426, 428 (1917); *Powers, Inc.* v. *Wayside, Inc., of Falmouth*, 343 Mass. 686, 690–691 (1962). In our view the present case is governed by the general rule that a determination of what constitutes a reasonable time is a question for the jury. *Douglass Axe Mfg. Co.* v. *Gardner*, 10 Cush. 88, 92 (1852). *Haskins* v. *Hamilton Mut. Ins. Co.*, 5 Gray 432, 438–439 (1855).

Nor is Loranger's claim barred on the ground that it sought lower bids from other subcontractors after using Hauserman's figure. Loranger's general manager did testify that even after using Hauserman's figure, he felt free to solicit lower bids from other contractors. However, there was no evidence that such bids were in fact solicited. In the absence of such evidence, we need not consider whether bid-shopping would defeat recovery by Loranger. See *Constructors Supply Co.* v. *Bostrom Sheet Metal Works, Inc.*, 291 Minn. 113, 121–123 (1971); *Saliba-Kringlen Corp.* v. *Allen Engr. Co.*, 15 Cal. App. 3d 95,

101–103 (1971); Calamari & Perillo, Contracts § 6–10, at 213 (2d ed. 1977); Simpson, Contracts § 61, at 118 (2d ed. 1965).

Nor can Hauserman prevail on its assertion that its subbid did not constitute an "offer." Recovery under promissory estoppel is not dependent upon the existence of a formal offer as traditionally defined in contract law. Henderson, *supra* at 344 n.5, 358. *Hoffman* v. *Red Owl Stores, Inc.*, 26 Wis. 2d 683, 698 (1965). Recovery in these circumstances requires no more than a promise upon which the promisee could reasonably have placed reliance; and attention is to be focused upon the reasonableness of that reliance.[3,4]

Finally, while it is doubtful that the prohibitions of the Statute of Frauds in G. L. c. 106, § 2–201, and c. 259, § 1, Fifth, are applicable where recovery is otherwise warranted on the basis of promissory estoppel (see *Peterson Tractor Co.* v. *Orlando's Snack-Mobile Corp.*, 270 Cal. App. 2d 787, 791 [1969]; Calamari & Perillo, Contracts § 19–48, at 736 [2d ed. 1977]; cf., *Cellucci* v. *Sun Oil Co.*,

---

[3] Hauserman's reliance upon *Cannavino & Shea, Inc.* v. *Water Works Supply Corp.*, 361 Mass. 363, 366 (1972), to support its argument that a formal offer is required is misplaced. In *Cannavino* the general contractor's claim which was rejected was based upon Restatement of Contracts 2d § 89B(2) (Tent. Draft No. 2, April 30, 1965) and upon the theory of equitable estoppel. See *Cannavino, supra* at 366, and *Crane Co.* v. *Park Constr. Co.*, 356 Mass. 13, 17 (1969). *Cannavino* did not pass upon the applicability of promissory estoppel as set forth in Restatement of Contracts § 90 (1932).

[4] While application of promissory estoppel reduces formal protection against nonconsensual imposition of contract liability, the doctrine is limited by the requirement that the reliance must be reasonable. A promisor can prevent reasonable reliance by stating that his promise is only an invitation to negotiate or that his promise must be accepted within a reasonable time, or by withdrawing his promise before detrimental reliance thereon by the promisee. Henderson, *supra* at 360–361. *Debron Corp.* v. *National Homes Constr. Crop.*, 493 F.2d at 356 n.2. Boyer, *supra* at 472–473. Moreover, the promisor becomes liable only if the promisee suffers substantial detriment and only if injustice would result if the promise were not enforced. Restatement of Contracts § 90 (1932).

2 Mass. App. Ct. at 728), they are not a bar to recovery where as here the contract was for labor as well as material (*Lusalon, Inc.* v. *Thomas O'Connor & Co.*, 3 Mass. App. Ct. 734 [1975]; see *Saugus* v. *B. Perini & Sons*, 305 Mass. 403, 404–405 [1940]; *Gulash* v. *Stylarama, Inc.*, 364 A.2d 1221 [Conn. Supp. 1975]; contrast *Bonebrake* v. *Cox*, 499 F.2d 951 [8th Cir. 1974]) and where the contract could have been performed within one year. *Bolton* v. *Van Heusen*, 249 Mass. 503, 506 (1924). *Nickerson* v. *President & Fellows of Harvard College*, 298 Mass. 484, 486 (1937). *Joseph Martin, Inc.* v. *McNulty*, 300 Mass. 573, 575, 577 (1938).

*Judgment affirmed.*

Justice Grant concurs in the result.