# LORANGER CONSTRUCTION CORPORATION vs. E. F. HAUSERMAN COMPANY.

Bristol. October 4, 1978. — December 5, 1978.

Present: HENNESEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Estoppel. Contract*, What constitutes, Consideration.

Evidence warranted a finding that a cost estimate given to a general contractor by a potential subcontractor's sales engineer for supplying and installing metal partitions in accordance with contractual specifications was an offer or promise and not merely an invitation to further negotiations. [760]

Where a supplier of metal partitions gave a general contractor a cost estimate which the general contractor included in its successful bid for construction work at a community college, but subsequently refused to execute a subcontract, the evidence would have warranted submitting the case to the jury on the principle that a promise is enforceable by virtue of reliance. [760-761]

In an action by a general contractor to recover damages from a subcontractor which had given the general contractor a cost estimate which was included in the contractor's bid, but had subsequently refused to execute a subcontract, the case was not submitted to the jury on a basis that would permit a finding that the defendant's offer or promise induced action "of a substantial character" on the part of the plaintiff [761-762]; however, the jury, pursuant to the charge and on the evidence before them, were warranted in finding either that there had been an exchange of promises between the parties, or that the subcontractor's offer had been accepted by the contractor when he used the estimate in submitting his bid, or that the subcontractor's offer was accepted when the subcontractor sent it a subcontract form, and in finding that the contractor's promise or act made the subcontractor's promise binding [762-763].

CONTRACT OR TORT. Writ in Superior Court dated December 19, 1969.

The case was tried before *Kent B. Smith*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James M. Cronin* for the defendant.

*Thomas Crotty* for the plaintiff.

BRAUCHER, J. The plaintiff, a contractor, was preparing its bid for construction at the Cape Cod Community College. It received an "estimate" of $15,900 for movable steel partitions from the defendant, and used the estimate in preparing the bid it submitted. The construction contract was awarded to the plaintiff, the defendant refused to perform in accordance with its estimate, and the plaintiff engaged another company to supply and install the partitions for $23,000. The Appeals Court upheld an award of damages to the plaintiff, we allowed the defendant's petition for further appellate review, and we affirm the judgment for the plaintiff.

The action was filed in 1970. Demurrers to the declaration and to an amended declaration were sustained, and leave to file a second amended declaration was then denied, the judge "being of opinion there is no cause of action." The Appeals Court held that count 1 of the amended declaration did set out a cause of action, and reversed the order denying leave to amend. 1 Mass. App. Ct. 801 (1973). Thereafter the plaintiff filed an amended declaration containing four counts, the case was tried to a jury in October, 1974, and a verdict was returned for the plaintiff in the amount of $7,100. The Appeals Court held that the plaintiff was "foreclosed from recovery on any traditional contract theory," but could "recover on the theory of promissory estoppel, a basis for recovery not previously explicitly accepted in the courts of this Commonwealth." 6 Mass. App. Ct. 152, 154 (1978). The defendant argues that "the adoption of this new theory of law is procedurally unfair, unwarranted by the facts in the case, and contrary to the statutory policy of the Commonwealth."

We summarize the evidence most favorable to the plaintiff. On May 20, 1968, the plaintiff was preparing its bid to become general contractor on the construction project. The specifications called for movable metal partitions from the defendant or one of two other suppliers, "or equal." About fifteen days earlier, a sales engineer employed by the defendant had prepared a "quotation" or "estimate" of $15,900 for supplying and installing the partitions. The figure was based on information received from the architect's office, and the engineer knew that the general contractor would submit a bid based on such estimates from subcontractors. The estimate was given to the plaintiff by telephone on May 20, 1968; it was also given to other general contractors. The engineer waited until shortly before bids were due on the general contract to prevent the general contractor from shopping for a lower price from other subcontactors. The plaintiff received no other quotations on the partitions, and used the defendant's quotation in preparing the bid on the general contract, submitted the same day.

The general contract was awarded to the plaintiff on June 21 or 26, 1968. Some time in August or September, the plaintiff informed the defendant that it was getting ready to award the partition contract and asked whether it had the defendant's lowest price. Thereafter, on September 12, 1968, the plaintiff sent the defendant an unsigned subcontract form based on the $15,900 figure. The defendant rejected the subcontract, and the plaintiff engaged another company to supply and install the partitions for $23,000. The partition work was not scheduled to begin until the summer of 1969; in fact, work began in the summer of 1970, and the last payment for it was made in 1972.

At the close of the plaintiff's evidence, it waived counts 2, 3 and 4 of the declaration. The defendant rested and moved for a directed verdict. The motion was denied. After verdict, the defendant moved for judgment notwithstanding the verdict, and that motion was denied. The

questions argued to us relate to the question whether the evidence made a case for the jury.

1. *The offer or promise.* The defendant argues that the "quotation" or "estimate" made by its sales engineer was not an offer or promise, but merely an invitation to further negotiations, citing *Cannavino & Shea, Inc.* v. *Water Works Supply Corp.*, 361 Mass. 363, 366 (1972). But the *Cannavino* case involved the circulation of a price list without specification of quantity. Here there was more; the defendant was to do a portion of the work called for by the plans and specifications. Of course, it was possible for the sales engineer to invite negotiations or offers. See *Kuzmeskus* v. *Pickup Motor Co.*, 330 Mass. 490, 492-494 (1953). But it was also possible for him to make a commitment. His employer stated in answer to interrogatories that it was "unable to determine whether or not an employee of the defendant spoke with any of the plaintiff's employees on or about May 20, 1968," and the only direct evidence of the estimate was the testimony of the engineer. We think the jury were warranted in resolving ambiguities in his testimony against the defendant, and in finding that the estimate, in the circumstances, was an offer or promise. See *Jaybe Constr. Co.* v. *Beco, Inc.*, 3 Conn. Cir. Ct. 406, 410-411 (1965).

2. *Reliance on the promise.* It seems clear enough, as the Appeals Court held, that the evidence made a case for the jury on the basis of the plaintiff's reliance on the defendant's promise. "An offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice." Restatement (Second) of Contracts § 89B(2) and Illustration 6 (Tent. Drafts Nos. 1-7, 1973). This doctrine is not so novel as the defendant contends. In addition to the authorities cited by the Appeals Court, see *Cannavino & Shea, Inc.* v. *Water Works Supply Corp.*, 361 Mass. 363, 365-366 (1972); *Crane Co.* v. *Park Constr. Co.*,

356 Mass. 13, 17 (1969).[1] When a promise is enforceable in whole or in part by virtue of reliance, it is a "contract," and it is enforceable pursuant to a "traditional contract theory" antedating the modern doctrine of consideration. See *Sullivan* v. *O'Connor*, 363 Mass. 579, 588 n.6 (1973); Restatement (Second) of Contracts § 90, Comment a (Tent. Drafts Nos. 1-7, 1973). We do not use the expression "promissory estoppel," since it tends to confusion rather than clarity.

3. *Procedural unfairness.* The defendant contends that the decision of the Appeals Court, resting on "the new theory of promissory estoppel," departed from the pleadings and from the theory on which the case was tried. So far as the pleadings are concerned, count 1 of the declaration alleged an exchange of promise for promise and also the submission of a bid by the plaintiff in reliance on the agreement between the parties. If either allegation was sustained by proof, the other could be treated as surplusage. The pleadings could have been amended to conform to the evidence, even after judgment; failure so to amend does not affect the result of the trial. Mass. R. Civ. P. 15(b), 365 Mass. 761 (1974). *Janke Constr. Co.* v. *Vulcan*

---

[1] Cases holding that a subcontractor may be bound on the basis of reliance by the general contractor include *Janke Constr. Co.* v. *Vulcan Materials Co.*, 527 F.2d 772, 777-778 (7th Cir. 1976) (Wisconsin law); *Debron Corp.* v. *National Home Constr. Corp.*, 493 F.2d 352, 356-357 (8th Cir. 1974) (Missouri law); *N. Litterio & Co.* v. *Glassman Constr. Co.*, 319 F.2d 736, 738-740 (D.C. Cir. 1963); *Reynolds* v. *Texarkana Constr. Co.*, 237 Ark. 583, 584-585 (1964); *Saliba-Kringlen Corp.* v. *Allen Eng'r Co.*, 15 Cal. App. 3d 95, 106 (1971); *Bumby & Stimpson, Inc.* v. *Southern Reinforcing Steel Co.*, 348 So. 2d 1216, 1217 (Fla. Dist. Ct. App. 1977); *C.H. Leavell & Co.* v. *Grafe & Assocs.*, 90 Idaho 502, 513-514 (1966); *S. N. Nielsen Co.* v. *National Heat & Power Co.*, 32 Ill. App. 3d 941, 944 (1975); *Constructors Supply Co.* v. *Bostrom Sheet Metal Works, Inc.* 291 Minn. 113, 116 (1971); *E.A. Coronis Assocs.* v. *M. Gordon Constr. Co.*, 90 N.J. Super. 69, 79 (1966); *Northwestern Eng'r Co.*, v. *Ellerman*, 69 S.D. 397, 408 (1943); *Union Tank Car Co.* v. *Wheat Bros.*, 15 Utah 2d 101, 104 (1964). But cf. *Albert* v. *R.P. Farnsworth & Co.*, 176 F.2d 198, 203 (5th Cir. 1949) (Louisiana law); *James Baird Co.* v. *Gimbel Bros.*, 64 F.2d 344, 346 (2d Cir. 1933) (no State specified); *Tatsch* v. *Hamilton-Erickson Mfg. Co.*, 76 N.M. 729, 732-733 (1966).

*Materials Co.*, 527 F.2d 772, 776 (7th Cir. 1976). *Schafer v. Fraser*, 206 Or. 446, 481 (1955). See *Babler* v. *Roelli*, 39 Wis. 2d 566, 572-573 (1968). The record does not disclose any authorization by the judge for the pleadings to go to the jury. See Rule 7 of the Superior Court (1974).

In view of the defendant's claim of procedural unfairness, we requested and received a transcript of the judge's charge to the jury. The defendant does not assert any error with respect to the charge, and did not include the charge in its record appendix. We do not treat the charge as the "law of the case." See *Commonwealth* v. *Krasner*, 360 Mass. 848, 849 (1971), and cases cited. But we find that the case was presented to the jury on the basis of offer, acceptance and consideration; there was no reference in the charge to reliance on a promise. We therefore cannot attribute to the jury a finding that the offer or promise of the defendant induced action "of substantial character" on the part of the plaintiff. We consider the case on the basis on which it was submitted to the jury. See *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 598-599 (1952).

Pursuant to the charge and on the evidence before them, the jury might have found that the defendant's offer was accepted in any one of three ways. First, there might have been an exchange of promises in the plaintiff's telephone conversation with the defendant's engineer, before the plaintiff's bid was submitted. Second, the offer might have been accepted by the doing of an act, using the defendant's estimate in submitting the plaintiff's bid. Acceptance in this way might be complete without notification to the offeror. *Bishop* v. *Eaton*, 161 Mass. 496, 499 (1894). See Restatement (Second) of Contracts § 56(1), (2)(c) (Tent. Drafts Nos. 1-7, 1973). Finally, the offer might have remained outstanding, unrevoked, until September, 1968, or it might have been renewed or extended when the plaintiff asked whether it had the defendant's lowest price; in either case it might have been accepted when the plaintiff sent the defendant a subcon-

tract form on September 12. The evidence warranted the jury in finding that the defendant invited acceptance in any one of three modes, and in finding that the plaintiff's promise or act furnished consideration to make the defendant's promise binding.

"In the typical bargain, the consideration and the promise bear a reciprocal relation of motive or inducement: the consideration induces the making of the promise and the promise induces the furnishing of the consideration." Restatement (Second) of Contracts § 75, Comment b (Tent. Drafts Nos. 1-7, 1973). In the present case, the jury could infer that the defendant's engineer intended to induce the plaintiff's promise or action in the hope that the defendant would benefit, and thus that his offer or promise was induced by the hoped-for acceptance. Even more clearly, the jury could find that the plaintiff's promise or action was induced by the defendant's offer or promise. Such findings would warrant the conclusion that there was a "typical bargain," supported by consideration. See *Air Conditioning Co. of Hawaii* v. *Richards Constr. Co.*, 200 F. Supp. 167, 170-171 (D. Hawaii 1961), aff'd on other grounds, 318 F.2d 410, 412-413 (9th Cir. 1963). Indeed, review of the cases suggests that many decisions based on reliance might have been based on bargain. See Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343, 368-371 (1969). Once consideration and bargain are found, there is no need to apply § 90 of the Restatement, dealing with the legal effect of reliance in the absence of consideration.

4. *Statutory policy.* The defendant did not argue any question of statutory policy to the Appeals Court. It argues to us that the decision of the Appeals Court is contrary to the policy of G. L. c. 149, §§ 44A-44L, regulating bidding on contracts for the construction of public works. The argument seems to relate primarily to subcontract bids described in § 44C. Such bids must be listed in the general contractor's bid under § 44F, and must be filed with the awarding authority under § 44H. The de-

fendant was not in any of the trades to which those provisions apply. In any event, the argument relates only to the reliance doctrine on which the Appeals Court based its decision. We decide on a different basis.

5. *Other issues.* Several other matters argued by the defendant to the Appeals Court are discussed in the opinion of that court: unreasonable delay by the plaintiff in notifying the defendant that it was to be the subcontractor, "bid shopping" by the plaintiff, and application of the Statute of Frauds, G. L. c. 106, § 2-201, and c. 259, § 1, Fifth. The defendant has not emphasized these matters in its argument to us. The Appeals Court held that they did not bar recovery based on reliance, and they have no more force to bar recovery based on bargain plus reliance. We therefore do not consider them.

*Judgment of the Superior
Court Department affirmed.*