Lu, John T., J.
Plaintiffs Ira Grossman and Gail Wilson (collectively the Grossmans), buyers of a house in Marblehead, Massachusetts, brought this action against the sellers, sellers’ agent and real estate agency, and a home inspector for fraud and misrepresentation. The Grossmans allege that the defendants listed and sold the property knowing of defects in the flooring and roof.
Susan Noble (Noble), the real estate agent, her former employer, Carlson GMAC Realty (Carlson), and Frederick and Patricia Pouy (Pouys), the sellers, move for summary judgment on fraud, negligent misrepresentation, promissory estoppel, and G.L.c. 93A claims. Genuine issues of material fact relating to the extent and nature of the defects and the various parties’ knowledge of them precludes summary judgment on all counts except the c. 93A claim against the Pouys, which is foreclosed because there is no material issue of fact as to the conclusion that this was a private transaction that did not take place in a business context.
BACKGROUND
The relevant undisputed facts viewed in the light most favorable to the non-moving party, the Gross-mans, are as follows.
Grossman is a former attorney, real estate agent, and real estate developer. Gail Wilson was also a real estate agent and developer and they, individually, jointly, or in partnership with others, own several other properties. In the fall of 2005, Grossman and Wilson first expressed interest in buying the property at 9 Roydon Road in Marblehead, Massachusetts.
On September 6, 2005, the Grossmans received and signed a Seller’s Statement of Property Condition (Seller’s Statement). Noble gave the Seller’s Statement to the Grossmans to fill out. The document contained the following provisions:
NOTICE TO BUYERS: All information provided herein is subject to verification by Buyer. Neither seller nor broker is an expert on any of the matters outlined herein. Buyer is advised to obtain independent counsel, inspections, and/or professional ad-visors to verify the condition of the property and investigate all matters related to the property, (p. 1)
Buyer acknowledges receipt of this Seller’s Statement and hereby understands that the preceding information was provided by seller and is not guaranteed by broker/agent. This disclosure statement is not a representation, warranty or guaranty as to the condition of the property by either seller or broker. Buyer is encouraged to undertake his/her own inspections and investigations via legal counsel, home, structural and other advisors, (p. 4)
The Grossmans initialed or signed each page of the Seller’s Statement. Paragraph 37 of the Seller’s Statement provided a space for the seller to comment on the roofing, including any repairs, problems, or leaks. No problems were listed. Paragraph 40 provided a similar space to describe interior problems or damage, including issues related to ceilings, walls, and floors.
On September 9, 2005, Michael Drouin (Drouin), an employee of ABC Home Inspection, Inc. (ABC), inspected the property. The inspection report noted that a portion of the roof was about twenty-six years old, that there were some defective shingles, and that the condition of the flooring and part of the roof were Fair/Unsatisfactory.
On September 17, 2005, the Grossmans and Pouys executed a purchase and sale agreement (“P&S Agreement"). The purchase price was $825,000. Paragraph thirty, titled Warranties and Representations Ac-knowledgement, provided:
BUYER acknowledges that they have not relied on any warranties and representations except as set forth in writing and the following additional warran *624 ties and representations, if any, made by either the SELLER or the Broker(s): NONE.
Paragraph fifteen of Rider A to the P&S Agreement provided:
The BUYER has been afforded the opportunity to have the subject property inspected by an inspection service selected by the BUYER. Execution of this Agreement is deemed to be an acknowledgment that the BUYER is satisfied with the condition (structurally and otherwise) of the property and its electrical, heating and other systems and services. BUYER’S agreement in this paragraph shall survive the delivery of the deed. SELLER expressly disclaims any representation concerning the physical condition of the land and improvements constituting the premises. BUYER acknowledges that he is purchasing the premises “as is” and BUYER acknowledges that the SELLER has made no warranties or representations on which BUYER has relied (other than those specifically set forth in this Agreement and the Seller statement delivered to the BUYER) with respect to or in connection with the premises, it being the understanding of the parties hereto that the entire Agreement of the parties with respect to this transaction is fully set forth herein.
After the Grossmans purchased the property, they discovered problems and defects with the flooring and sub-flooring. Removal of the carpeting and flooring revealed past repairs and soft spots. Carpeting covered the soft spots, and furniture and planters were located near the spots, preventing a thorough examination of the areas. Faded and bleached-out spots also marred the carpet.
Areas of the kitchen were also damaged. The refrigerator primarily sat on rotted flooring, with a hole directly beneath the refrigerator itself. The adjacent walls were full of mold. A strong odor permeated the house, apparently from rodents and rodent droppings located in a foyer wall and under the rotted kitchen floor.
Finally, the roof was in disrepair and needed to be completely replaced. Shingles were missing, blisters appeared, and several areas needed to be patched.
Against all defendants party to these motions, the Grossmans allege fraud (Counts I and IV), negligent misrepresentation (Counts II and V), promissory es-toppel (Counts III and VI), and violation of G.L.c. 93A (Count VIII). They also claim negligence on the part of ABC and Drouin (Count VII).
DISCUSSION
I. Summary Judgment Standard
Summary judgment will be granted where there are no genuine issues as to any material fact and where the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56 (c); Cassesso v. Comm'r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
When a party has made and properly supported a motion for summary judgment, “an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Mass.R.Civ.P. 56 (e). “If the movant presents credible evidence that would entitle him to a directed verdict if not controverted at trial, this evidence must be accepted as true when the opposing party does not offer evidence supporting his contention that an issue of fact remains.” Framingham Clinic, Inc. v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283, 298-99 (1980) (quoting 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure §2727, at 532-34 (1973 & Supp. 1980)).
II. Fraud: Counts I and IV
To prevail on the fraud claim, the Grossmans must show: (1) a misrepresentation of material fact; (2) the misrepresentation was intended to induce plaintiffs to act on it; (3) the misrepresentation was made with knowledge of its falsity, or was made of a fact susceptible of actual knowledge with recklessness as to its truth or falsehood, or was the utterance of a half truth which in effect is a lie, or was the failure to disclose known facts when there was a duty to disclose; (4) the misrepresentation was made with intent that it be acted upon and; (5) damages. See Kilroy v. Barron, 326 Mass. 464, 465 (1950). Unreasonable reliance is a complete bar to a claim for fraud. See Mahaney v. John Hancock Mut. Life Ins. Co., 6 Mass.App.Ct. 919, 920 (1978). Ordinarily, whether a party acted reasonably in relying on a statement is a question of fact for the fact finder. See Cataldo Ambulance Serv., Inc. v. Chelsea, 426 Mass. 383, 387 (1998).
The Pouys argue that the record is devoid of any misrepresentations regarding the alleged defects. They are mistaken. For example, Michael Williams, a roofer hired by the Pouys to inspect the roof, said that he told the Pouys multiple times over the course of several years that the roof needed to be replaced. See the affidavit of Michael Williams. Michael Graham, an employee of a construction company hired by the Grossmans to work on the house, testified that the stains on the carpet were in the same shape as the *625 planters that covered them and furniture was located on top of the damaged areas. See the affidavit of Michael Graham. Pictures of the property, showing rotten sub-flooring and recent attempted repairs, indicate potentially longstanding defects. Several witnesses also corroborated the Grossmans’ description of the smell that permeated the house. See the affidavit of Michael Graham and affidavit of Shannon McCoig.
The Grossmans allege that Noble assisted the Pouys in filling out the Seller’s Statement, represented that she knew the property well, and told the Grossmans that she had retained a staging company to arrange furniture on the property or had moved the furniture herself. See the deposition of Ira Grossman at 66-70. Noble counters that there is no evidence that Noble supplied the Grossmans with specific, false information regarding the alleged defects. She also asserts that she never made false statements or suggested that she moved furniture around.
Relying on Fernandes v. Rodrigue, 38 Mass.App.Ct. 926, 927 (1995), Noble argues that, as an agent of the Pouys, even if she did make false statements, she cannot be liable for passing along untrue statements made to her by the principals, the Pouys, because the Pouys knew the information to be untrue. In Fernandes, a real estate broker, acting on information obtained from the sellers and town records, represented to the buyers that a piece of property to be sold was four acres. See id at 926-27. The property was actually just under three acres. Id at 927. As to the negligent misrepresentation claim, the Appeals Court affirmed summary judgment in favor of the broker. Id at 927-28.
Fernandes is distinguishable. The facts in this case suggest that Noble had much more first-hand knowledge of the condition of the house than the broker had in Fernandes where the broker spoke with the sellers and examined town records to determine the correct acreage. Id She could reasonably do no more. Id. Here, Noble did-not simply get information from the Pouys; she had been in the house and presumably would have seen the alleged damage. It was reasonable for the broker in Fernandes to rely on the statements given to her by the sellers, because she also had obtained similar information from presumably reliable town records. Noble had only her own observations and the Pouys’ assertions to work from. Finally, while it would be difficult and unreasonable for the broker to estimate the exact acreage of a parcel of land by eye or to expect the broker to affirmatively hire a surveyor to measure the acreage, the defects in this case would have been obvious. There is sufficient evidence to raise a material issue of fact as to whether Noble misrepresented the condition of the house in order to sell it.
To succeed on the fraud claim, the Grossmans must have reasonably relied on the representations made to them. See Mahaney, 6 Mass.App.Ct. at 920. There is conflicting evidence on whether the Grossmans’ reliance was reasonable. The initial report by ABC before the signing of the P&S Agreement contained several references to areas of the house that needed repair or were unsatisfactory. See the On-Site Field Report at 1, 11, 13, 15, and 23. The Grossmans are familiar with and have been involved in many real estate transactions in the past. See the deposition of Ira Grossman at 15-20 and deposition of Gail Wilson at 16-24. This knowledge makes reliance on the Seller’s Statement and P&S Agreement potentially unreasonable.
The P&S Agreement also contained several provisions, so-called merger or exculpatory clauses. See the P&S Agreement at 1,4. These provisions do not extricate the Pouys from potential liability. Regardless of the label, “the settled rule of law is that a contracting party cannot rely upon [merger or exculpatory provisions] as protection against claims based upon fraud or deceit.” Sound Techniques, Inc. v. Hoffman, 50 Mass.App.Ct. 425, 429 (2000), citing Bates v. Southgate, 308 Mass. 170, 182-83 (1941). See also Billingham v. Dornemann, 55 Mass.App.Ct. 166, 175 (2002) (language in P&S agreements that seeks to shelter the seller from liability are not an automatic defense to allegations of fraud).
Noble and Carlson read Sound Techniques, Inc. too broadly. In that case, the defendant invoked a merger or exculpatory clause to escape liability from a negligent misrepresentation claim, not a fraud claim. See Sound Techniques, Inc., 50 Mass.App.Ct. at 426-27. The Court drew a distinction between fraud and negligent representation claims. See id. at 430-31. Merger clauses are not enforced in Massachusetts when the circumstances indicate fraud, because such situations indicate egregious or intentional behavior designed to adversely influence another party. See id. at 430. If the circumstances indicate negligent misrepresentation, however, the clause may be enforced because the parties entered into the contract free from influence by or in reliance upon any representations other than those set out in the agreement. See id. at 432-34. The Court also confined its decision to the specific circumstances in the case, a dispute over a commercial lease. See id. at 431 (referring specifically to “commercial transactions”) & 433 n.10 (limiting holding to circumstances of this case).
This case is factually distinct. Sound Techniques, Inc. concerned a commercial agreement, while this case concerns a private agreement for the sale of a house. Nothing serves to render the merger clauses completely ineffective. There are genuine issues of material fact as to the nature of the representations made by the parties. A determination that the Pouys committed fraud may render them liable, because the merger clauses would be unenforceable. Summary judgment is not appropriate on Counts I and IV.
III. Negligent Misrepresentation: Counts II and V
“A defendant is liable for negligent misrepresentation if ‘in the course of his business . . . [he] supplies false information for the guidance of others in their *626 business transactions’ on which the others justifiably rely, ‘if he fails to exercise reasonable care or competence in obtaining or communicating the information.’ ” Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 587 (1996), quoting Restatement (2d) ofTorts §552(1) (1977). “Honesty requires only that the maker of a representation speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says.” Restatement (2d) ofTorts §552(1), cmt. a (1977). “(T]he defendant is subject to liability if, but only if, he has failed to exercise the care or competence of a reasonable [person] in obtaining or communicating the information.” Id. at cmt. e. “The question is one for the jury, unless the facts are so clear as to permit only one conclusion.” Id.
In Sound Techniques, Inc., 50 Mass.App.Ct. at 431, the court directly addressed the issue of whether a merger clause protects a party against a claim of negligent representation. It concluded that under the circumstances of that case, a commercial transaction, the merger clause was effective to preclude liability. • Id. at 431-33. The court reserved judgment on the effect of merger clauses in “situations, involving, among others, consumers, a gross disparity in the bargaining positions of the parties, or unconscionable contract clauses.” Id. at 434 n. 11. This language suggests that there may be situations in which a merger clause would not automatically bar a claim for negligent misrepresentation.
One of these situations may be when the underlying spirit of the transaction is residential rather than commercial. In Sweeney v. DeLuca, Civil No. 04-2338 (Middlesex Super. Ct. Mar. 16, 2006) (MacLeod-Mancuso, J.) [20 Mass. L. Rptr. 628], the court examined the viability of a negligent misrepresentation claim where the parties entered into a purchase and sale agreement for a house to be occupied by the plaintiffs. After purchasing the house, the plaintiffs discovered numerous defects in the foundation and claimed that the house needed to be demolished and rebuilt. The court denied the defendants’ motion for summary judgment. The court distinguished Sweeney and Sound Techniques, Inc., noting that Sweeney dealt with a residential sale that was colored by fraud and Sound Techniques, Inc. was limited by footnote 11 to the commercial setting.
However, there is disagreement on this distinction. In Meka v. Hunneman & Co./Coldwell Banker, Civil No. 98-1763 (Essex Super. Ct. Jan. 13, 2003) (Kottmyer, J.) [16 Mass. L. Rptr. 60], the court, allowing a motion notwithstanding the verdict, upheld the validity of a merger clause, despite the self-limiting holding of Sound Techniques, Inc., where the transaction was for the sale of a house. The court ruled that Sound Techniques, Inc. was applicable, because there was no evidence of unequal bargaining power in the sale and the plaintiffs had an opportunity to hire a house inspector. Importantly, the ruling followed jury trial and verdict.
Genuine issues of material fact, including whether to characterize the transaction as commercial or residential, exist as to the nature of the transaction between the Grossmans and Pouys. A determination by a jury as to what happened between the parties could suggest several scenarios. If the transaction was commercial, Sound Techniques, Inc. would control, and the merger clause would bar the negligent misrepresentation claims. If the circumstances of the transaction were akin to the situation in Sweeney, then the merger clause may not preclude liability. On the other hand, facts like Meka may render the merger clause enforceable. The factual questions must be submitted to a jury, whose determination of the events can be considered in light of the case law.
The Grossmans’ argument that they were taken advantage of by more sophisticated and experienced parties ignores some contrary evidence. Each of them has worked in the real estate business and has been involved in many real estate transactions. They had an opportunity to see the house before they signed the P&S Agreement. They signed or initialed each page of the P&S Agreement. Nothing in the record indicates that they were coerced into signing the P&S Agreement or that the agreement had characteristics of an adhesion contract.
Genuine issues of material fact exist. Summary judgment on Counts II and v. must be denied.
IV. Promissory Estoppel: Counts III and VI
“Promissory estoppel — a phrase criticized by the Supreme Judicial Court in Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 761 (1978), as tending to confusion rather than clarity — consists simply of a promise that becomes enforceable because of the promisee’s reasonable and detrimental reliance.” Rooney v. Paul D. Osborne Deck Co., 38 Mass.App.Ct. 82, 83 (1995). “When a promise is enforceable in whole or in part by virtue of reliance, it is a ‘contract,’ and it is enforceable pursuant to a ‘traditional contract theory’ antedating the modem doctrine of consideration . . .” Loranger Construction Corp., 376 Mass. at 761 (citations omitted). To enforce a promise based on reliance, a party must prove all elements of a contract claim other than consideration. See R.I. Hosp. Trust Nat’l Bank v. Varadian, 419 Mass. 841, 850 (1995). Promissory estoppel, as an equitable doctrine, is used by the courts when no express contract exists. See Northrup v. Brigham, 63 Mass.App.Ct. 362, 369 (2005).
Noble and Carlson misinterpret the law of promissory estoppel. They state that the promissory estoppel claim must fail as a matter of law because “there is no contract between plaintiffs and Carlson/Noble.” See Opposition of Carlson and Noble to Plaintiffs’ Motion for Summary Judgment at 11. Relying on R.I. Hosp. Trust Nat’l Bank, Carlson and Noble suggest that because an action based on promissory estoppel is treated as if it were based on an express contract *627 theoiy, an express contract must exist. See R.I. Hosp. Trust Nat’l Bank, Mass. at 850 (“[A]n action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration”). This argument fails because promissory estop-pel is premised on the lack of a contract. See Northrup, 63 Mass.App.Ct. at 369. All that is required is that the elements of a standard contract exist, with reliance taking the place of valuable consideration. R.I. Hosp. Trust Nat’l Bank, 419 Mass. at 850.
Noble, Carlson, and the Pouys also point to the merger clause and the Grossmans’ unreasonable reliance on the Pouys’ and Noble’s statements to argue against the promissory estoppel theoiy. With respect to the Pouys, the merger clause is ineffective for the reasons stated above. As to Noble and Carlson, the merger clause, a provision of a written contract, is inapplicable to a promissory estoppel claim. Finally, whether the plaintiffs reasonably relied on the statements or representations made by the Pouys and Noble is a question of fact that is inappropriate for decision at the summary judgment stage.
V. G.L.c. 93A: Count VIII
General Laws c. 93a, §2(a) makes unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce.” “Courts have deliberately avoided setting down a clear definition of conduct constituting a violation of G.L.c. 93A.” Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983). “It has been held, generally, that for conduct to violate the standard of §2(a), (1) it must fall ‘within at least the penumbra of some common-law, statutory, or other established concept of fairness,’ (2) it must be unethical or unscrupulous, and (3) it must cause substantial injury to a consumer or another businessman.” Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 679 (1986), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), rev. denied, 398 Mass. 1105 (1986). Mere negligence is not a violation of c. 93A; however, a deceptive act resulting from a defendant’s negligence is. See Linthicum v. Archambault, 379 Mass. 381, 388 (1979); Squeri v. McCarrick, 32 Mass.App.Ct. 203, 207 (1992).
Liability under c. 93A is generally premised on a willful misstatement of fact. See Quinlan v. Clasby, 71 Mass.App.Ct. 97, 102 (2008). A negligent misrepresentation of fact may also constitute an unfair or deceptive act within the meaning of c. 93A if the truth could have been reasonably ascertained. See id. The sellers, the Pouys, can only be liable if they, or one of them, was acting in a business or commercial context. See Lantner v. Carson, 374 Mass. 606, 607-08 (1978). There is no exposure under c. 93A for the individual homeowner who sells his defective home utilizing the services of a real estate broker. See Lantner, 374 Mass. at 608 (c. 93A claim not available if transaction is strictly private in nature and is in no way undertaken in the ordinary course of business). A real estate broker, however, or one actively involved in the real estate transaction, can be subject to liability under c. 93A. See Rousseau v. Gelinas, 24 Mass.App.Ct. 154, 158-59 (1987); Mongeau v. Boutelle, 10 Mass.App.Ct. 246, 252 (1980).
In this case, the c. 93A claim is based on the allegation that the Pouys and Noble made unfair or deceptive representations to the Grossmans. Noble, as the real estate broker, may potentially be liable. See Rousseau, 24 Mass.App.Ct. at 158-59 (broker jointly owned with wife several properties besides their private home, was actively involved in every stage of the real estate transaction, and, by trade had previously engaged in various real estate transactions). The Pouys may be liable if they acted in a commercial or business context, because c. 93A applies only to the regulation of business practices. See Lantner, 374 Mass. at 608; Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975); Newton v. Moffie, 13 Mass.App.Ct. 462, 468 (1982).
“Whether a private individual’s participation in an isolated transaction takes place in a ‘business context,’ ” thus rendering him liable under c. 93A, “must be determined from the circumstances of each case.” See Begelfer v. Negarian, 381 Mass. 177, 190-91 (1980). Factors bearing on that determination include the nature of the transaction, the character of the parties involved, the activities in which the parties participated, and whether the transaction is motivated by business or personal reasons. See Nei v. Burley, 388 Mass. 307, 317 (1983). A transaction for the sale of real property may implicate c. 93A. Compare Rousseau, 24 Mass.App.Ct. at 158-59 (c. 93A applicable), with Nei, 388 Mass. at 317-18 (sellers of real estate who played a minor role in the sale of lots, whose occupations were unrelated to real estate, and who devoted a negligible part of their time to the property outside the scope of c. 93A).
The summary judgment record indicates that the Pouys and Grossmans’ transfer of the home was undertaken for personal non-commercial reasons. The Grossmans wanted to buy a house to live in, and the Pouys sought to sell their house and move away. The Grossmans had no intention of buying the house to operate a business or pursue other business endeavors on the property. They were no more involved with this transfer of property than any other buyer in a similar situation.
The Grossmans’ prior experience with real estate transactions put them, at the least, on equal footing with Noble, the real estate agent. Noble’s participation in the transaction further militates against holding the Pouys liable under c. 93A. See Rousseau, 24 Mass.App.Ct. at 158-59 (real estate broker, as one involved in business transaction, may be liable under c. 93A); Lantner, 374 Mass. at 608 (individual homeowner not liable in purely private transaction). The *628 parties understood how to buy and sell a house and how to read and sign the necessary documents.
The circumstances suggest that the transaction was undertaken for personal not business reasons. There are no material issues of fact preventing Summary judgment for the Pouys on Count VIII. Noble, however, as a real estate agent, may be liable. As to Noble, summary judgment must be denied on Count VIII.
ORDER
The defendants Carlson GMAC Realty and Susan Noble’s Motion for Summary Judgment is DENIED, and the defendants Frederick R. Pouy and Patricia C. Pouy’s Motion for Summary Judgment is ALLOWED as to Count VIII but DENIED as to Counts I, II, and III.