**R. P. FARNSWORTH & CO., Inc. v. ALBERT.**

**Civ. A. No. 492.**

District Court, E. D. Louisiana, Baton Rouge Division.

Aug. 9, 1948.

Deutsch, Kerrigan & Stiles and Eberhard P. Deutsch, all of New Orleans, La., for plaintiff.

Durrett & Hardin, Calvin E. Hardin, Jr., and Kemble K. Kennedy, all of Baton Rouge, La., for defendant.

CHRISTENBERRY, District Judge.

This case was tried to the Court without a jury.

It is a suit for a money judgment in the sum of $6,549.60, representing damages allegedly suffered by the plaintiff by reason of an alleged breach of contract.

28

## Findings of Fact

The plaintiff, R. P. Farnsworth & Co. Inc., is a corporation organized under the laws of the state of Delaware, doing business in the State of Louisiana and elsewhere as a general building contractor. The defendant, Harry J. Albert, is a resident of the city of Baton Rouge, Louisiana, and is a plastering contractor.

On or about July 24, 1947, plaintiff, having been invited to submit a bid to Ethyl Corporation for the construction of a building at the Ethyl plant at North Baton Rouge, Louisiana, invited bids from the defendant and from other plastering contractors, for the plastering and other work incidental thereto in said building.

On or about August 4, 1947, defendant submitted to plaintiff. a written proposal to perform such plastering and incidental work for the sum of $22,450.40. Believing that this bid was too low to be correct, Thomas M. Sutter, an estimator employed by plaintiff, called the defendant on the telephone, told him his figure was low, and suggested that he review it. This the defendant did, and subsequently added $1550.00 to his proposal, making the total price $24,000.40.

The proposal submitted by defendant was the lowest received by plaintiff for the work in question, and plaintiff, relying thereon, used defendant's bid in computing its general bid, which bid it submitted to Ethyl Corporation on or about August 5, 1947.

On or about August 10, 1947, Ethyl Corporation awarded the general contract to plaintiff.

On August 19, 1947, the defendant called the office of the plaintiff, and talked to the assistant to the president, one Louis K. Good. During this conversation, defendant stated that he wished to withdraw his bid, to which Good replied that defendant could not do so as plaintiff had used such bid in its estimate. Good informed defendant that plaintiff was awarding him the contract, and that confirmation would be sent him as soon as it could be done. On this occasion Sutter also spoke to defendant and substantially confirmed what Good had told defendant.

On August 27, 1947, Ethyl Corporation entered into a formal contract with plaintiff for the construction of the building, and on the same day plaintiff formally, by telegram, accepted defendant's proposal.

Thereafter, plaintiff made repeated demands that defendant enter into a formal contract in compliance with his proposal, which defendant refused to do. Defendant also refused to perform the work under his accepted proposal.

Plaintiff called for new bids and of two submitted accepted the lower, that is to say, a bid submitted by C. R. Deen, of Baton Rouge, for the sum of $30,500.00. This bid was $6,549.60 higher than that submitted by defendant, and that difference is the amount being sued for.

## Discussion

The question to be decided here is whether a sub-contractor who submits to a general contractor a proposal to furnish materials and labor necessary to do certain work, may withdraw his proposal and refuse to comply therewith after the owner has accepted the general contractor's bid, which included and was based in part upon the proposal made by the sub-contractor.

Both plaintiff and defendant had had considerable experience in their respective lines of business, and were thoroughly familiar with the practices and customs of the building construction business in the city of Baton Rouge. The methods followed by plaintiff in inviting bids, and of the defendant in submitting his proposal were in accordance with those well-established practices and customs. Defendant, in submitting his proposal to plaintiff, did so with full knowledge that if his proposal was the lowest received by plaintiff for that character of work, he might expect his proposal to be used by the plaintiff in preparing the bid which it would submit to the owner, Ethyl Corporation. Acting upon the faith of defendant's proposal, plaintiff did, in fact, use such proposal in submitting its bid to the owner.

Defendant, before he submitted his proposal, of necessity, had access to the spec-

ifications prepared by the architects and his proposal was made pursuant to such specifications which were referred to in his proposal. These specifications included a form of bid required to be used in submitting bids for the general contract. One of the provisions of the form of bid was that if the bidder for the general contract were notified of the acceptance of his bid within thirty days of the time set for the opening of the bids, the bidder agreed to execute a contract for the work accepted, in the form of the Standard Agreement of the American Institute of Architects. The specifications contained a provision that any sub-contractor agreed to be bound to the general contractor, under whom he had a sub-contract, by the terms of the agreement, general conditions, drawings and specifications, and to assume toward the contractor all of the obligations and responsibilities that the contractor, by those documents, assumed toward the owner. Defendant must be charged with knowledge of these provisions at the time he submitted his proposal. He submitted his proposal on or about August 4, 1947, and was formally notified of its acceptance on August 27, 1947, which was well within the period of thirty days after the opening of the bids, during which the successful bidder for the general contract might be required to execute a formal contract.

It may well be argued that the agreement that the contractor, if notified of the acceptance within thirty days, would execute a contract in standard form became part of the proposal of the sub-contractor. But it is not necessary here to decide that question.

 It is clearly the law of Louisiana, which law is in this case controlling, that once the bid of the general contractor is accepted by the owner, it is too late for the sub-contractor to withdraw his bid, and the general contractor has a reasonable time after the acceptance of the bid in which to call upon the sub-contractor to perform. See Harris v. Lillis, La.App., 24 So.2d 689, 691. That case, which was decided by the Orleans Court of Appeals, is virtually on all fours with this one. There, as here, the sub-contractor submitted to the general contractor a proposal to perform certain construction work for a particular sum. The general contractor, in submitting his bid to the owner, used the proposal of the sub-contractor. Subsequent to the acceptance of the bid by the owner, the sub-contractor refused to perform the work for which he had submitted his proposal. In that case, the evidence showed, and the court so held, that in accordance with the custom prevailing in the building trade in New Orleans, an offer by the sub-contractor to a general contractor to do work is irrevocable after the contractor has used the estimate of the sub-contractor as a basis for his offer to the owner, and the owner has accepted the general contractor's bid. In the case at bar, the evidence established that it is the universal custom in the building trade in Louisiana that when a sub-contractor furnishes a bid to a general contractor, it is considered irrevocable after that bid has been used in the preparation of the general contractor's bid to the owner, and that if the sub-contractor does not intend it to be so, it is customary for him to so state in his bid.

In the instant case, not only did the defendant fail to qualify his proposal, but as was true with respect to the defendant in Harris v. Lillis, supra, his refusal to perform under the proposal did not come until subsequent to the acceptance by the owner of the general contractor's bid. In that case the defendant conceded that he probably had made a mistake in agreeing to do the work for the price stipulated. And the Court of Appeals, after stating that the case appeared to be one where the sub-contractor was seeking to recant from his engagement because he made a mistake in offering to do the work for an unprofitable price, said: "It is clear that such a defense cannot be countenanced. See Schorr v. Nosacka, 16 La.App. 20, 132 So. 524, and Reimann Construction Co. v. Heinz, 17 La.App. 687, 137 So. 355."

 It appears here also that the defendant seeks to recant from a bid which he found, despite the opportunity afforded him to review and increase it, too low and hence unprofitable. But whatever the

30

reason for his attempted withdrawal, coming as it did after acceptance of the general bid, it was too late.

When the defendant refused to comply with his proposal, plaintiff did · the only thing that it could in the circumstances, namely, invite new bids. The result of this was that plaintiff was compelled to pay the additional sum of $6,549.60, which sum was not included in the bid submitted to Ethyl Corporation, and to the extent of which plaintiff was damaged.

### Conclusions of Law

The Court has jurisdiction of the parties and the subject-matter of this suit.

Once the plaintiff's bid was accepted by the owner Ethyl Corporation, it was too late for defendant to withdraw his proposal, and plaintiff had a reasonable time thereafter in which to call upon defendant to perform.

The time within which plaintiff called upon defendant to perform was reasonable.

Defendant's refusal and failure to perform under his accepted proposal injured plaintiff to the extent of $6,549.60, and plaintiff is entitled to judgment against defendant for that amount, with interest from date of judicial demand and costs.

Such judgment may accordingly be entered.