90 N.J. Super. 69 (1966)
216 A.2d 246
E.A. CORONIS ASSOCIATES, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
M. GORDON CONSTRUCTION CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1965.
Decided January 12, 1966.
*71 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Sam J. Abraham argued the cause for appellant (Messrs. Magner, Abraham & Kahn, attorneys).
Mr. Peter A. Adams argued the cause for respondent.
The opinion of the court was delivered by COLLESTER, J.A.D.
Summary judgment on cross-motions therefor was entered in favor of plaintiff E.A. Coronis Associates (Coronis) on defendant M. Gordon Construction Company's (Gordon) counterclaim in the Superior Court, Law Division.
This litigation began when plaintiff brought suit on three contracts not here pertinent. Defendant admitted liability thereon, but counterclaimed for breach of a contract to supply and erect structural steel on one of its projects. Gordon is a general contractor. In anticipation of making a bid to construct two buildings at the Port of New York Authority's Elizabeth Piers it sought bids from subcontractors. Coronis designs, fabricates, supplies and erects structural steel. On April 22, 1963 it sent the following letter to Gordon:
*72
 "April 22, 1963
 Mr. David BenZvi
 Gordon Construction Co.
 Elizabeth Avenue
 Linden, N.J.
 Subject:
 Bldgs. 131 & 132
 Elizabeth Port Authority Piers
 Structural Steel
Dear Mr. BenZvi:
We regret very much that this estimate was so delayed. Be assured that the time consumed was due to routing of the plans through our regular sources of fabrication.
We are pleased to offer:
All structural steel including steel girts and purlins Both Buildings delivered and erected ................... $155,413.50 All structural steel equipped with clips for wood girts & purlins Both Buildings delivered and erected ................... 98,937.50
NOTE: This price is predicated on an erected price of .1175 per Lb. of steel and we would expect to adjust the price on this basis to conform to actual tonnage of steel used in the project.
Thank you very much for this opportunity to quote.
 Very truly yours,
 E.A. CORONIS ASSOCIATES
 /s/ Arthur C. Pease
 Arthur C. Pease"
Gordon contends that at some date prior to April 22 the parties reached an oral agreement and that the above letter was sent in confirmation.
Bids were opened by the Port Authority on April 19, 1963, and Gordon's bid was the lowest. He alleges that Coronis was informed the same day. The Port Authority contract was officially awarded to Gordon on May 27, 1963 and executed about two weeks later. During this period Gordon never accepted the alleged offer of Coronis. Meanwhile, on June 1, 1963, Coronis sent a telegram, in pertinent part reading:
"Due to conditions beyond our control, we must withdraw our proposal of April 22nd 1963 for structural steel Dor Buildings 131 and 132 at the Elizabeth-Port Piers at the earliest possible we will resubmit our proposal."
*73 Two days later, on June 3, 1963, Gordon replied by telegram as follows:
"Ref your tel. 6-3 and for the record be advised that we are holding you to your bid of April 22, 1963 for the structural steel of carge bldgs 131 and 132."
Coronis never performed. Gordon employed the Elizabeth Iron Works to perform the work and claims as damages the difference between Coronis' proposal of $155,413.50 and Elizabeth Iron Works' charge of $208,000.
Gordon contends that the April 22 letter was an offer and that Coronis had no right to withdraw it. Two grounds are advanced in support. First, Gordon contends that the Uniform Commercial Code firm offer section, N.J.S. 12A:2-205, precludes withdrawal and, second, it contends that withdrawal is prevented by the doctrine of promissory estoppel.

I.
Prior to the enactment of the Uniform Commercial Code an offer not supported by consideration could be revoked at any time prior to acceptance. American Handkerchief Corp. v. Frannat Realty Co., 17 N.J. 12 (1954). The drafters of the Code recognized that the common law rule was contrary to modern business practice and possessed the capability to produce unjust results. See Corbin, "The Uniform Commercial Code  Sales, Should it be Enacted," 59 Yale L.J. 821, 827 (1950). The response was section 2-205 (N.J.S. 12A:2-205) which reverses the common law rule and states:
"An offer by a merchant to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or if no time it stated for a reasonable time. * * *" (Emphasis added)
Coronis' letter contains no terms giving assurance it will be held open. We recognize that just as an offeree runs a risk in acting on an offer before accepting it, the offeror runs a risk *74 if his offer in considered irrevocable. Cf., James Baird Co. v. Gimbel Bros. Inc., 64 F.2d 344 (2 Cir. 1933). In their comments to section 2-205 of the Code the drafters anticipated these risks and stated:
"However, despite settled courses of dealing or usages of the trade whereby firm offers are made by oral communication and relied upon without more evidence, such offers remain revocable under this Article since authentication by a writing is the essence of this section." Uniform Commercial Code (N.J.S. 12A:2-205), comment, par. 2.
We think it clear that plaintiff's writing does not come within the provision of section 2-205 of a "signed writing which by its terms gives assurance that it will be held open." See Wilmington Trust Company v. Coulter, 200 A.2d 441 (Del. Sup. Ct. 1964).
Having so concluded, we need not consider the question of whether the Coronis letter was an offer or whether the letter dealt with "goods." We note in this connection that Coronis quoted the price for structural steel delivered and erected.

II.
Defendant also argues that even if plaintiff's writing of April 22 is not a firm offer within the meaning of section 2-205, justice requires that we apply the doctrine of promissory estoppel to preclude its revocation. Restatement, Contracts, § 90 provides:
"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[1]
*75 Defendant argues that it relied on plaintiff's bid in making its own bid and that injustice would result if plaintiff could now revoke. Thus, defendant contends that plaintiff's bid is made irrevocable by application of the doctrine of promissory estoppel.
No New Jersey case has applied the rule in our State. But our highest court has twice implied that in appropriate circumstances it would. Friedman v. Tappan Development Corp., 22 N.J. 523 (1956); American Handkerchief Corp. v. Frannat Realty Co., supra. The general rule is that estoppel only applies to representations of facts past or present. Berman v. One Forty-Five Belmont Ave. Corp., 109 N.J. Eq. 256, 261 (Ch. 1931). The significant function of promissory estoppel is to apply an estoppel to representations or promises as to future events. 31 C.J.S. Estoppel § 80, pp. 466, 467 (1964). Writing for the court in Friedman, Justice Heher recognized that the doctrine was not truly an estoppel in the historical sense. He described the doctrine by stating:
"The term `promissory estoppel' is of comparatively recent origin in our jurisprudence, not altogether clear in its quality and import. It is not a true estoppel, but a departure from the classic doctrine of consideration that the promise and the consideration must purport to be the motive each for the other, in whole or at least in part, and it is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting, Wisconsin & Michigan R. Co. v. Powers, 191 U.S. 379, 386, 24 S.Ct. 107, 48 L.Ed. 229 (1903), Holmes, C.J.; Coast National Bank v. Bloom, supra [113 N.J.L. 597, 602 (E. & A. 1934)], a professed adaptation of the principle of estoppel to the formation of contracts where, relying on a gratuitous promise, the promisee has suffered detriment. Martin v. Meles, 179 Mass. 114, 60 N.E. 397 (Sup. Jud. Ct. 1901), Holmes, C.J. There is in such circumstances no representation of an existing fact, but merely that the promisor at the time of making the promise intends to fulfill it. The reliance is on a promise, and not on a misstatement of fact, and so the estoppel is termed `promissory' to mark the distinction. Williston on Contracts (rev. ed.), section 139." (22 N.J., at pp. 535, 536)
The evolving nature of the doctrine under examination is illustrated by the variation in the expressions of the authorities in its characterization. Thus it has been called a "species *76 of consideration," Porter v. Commissioner of Internal Revenue, 60 F.2d 673, 675 (2 Cir. 1932), affirmed 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880 (1933); and the "equivalent of" or a "substitute for" consideration. Allegheny College v. National Chautauqua County Bank of Jamestown, 246 N.Y. 369, 159 N.E. 173, 175, 57 A.L.R. 980 (Ct. App. 1927). The doctrine has found basic acceptance throughout the country. However, the courts have not agreed on where the doctrine is to be applied. They frequently state that in this country promissory estoppel "has been generally confined to charitable subscriptions, where difficulty has been encountered in sustaining the promise under the conventional theories of consideration, and to certain promises between individuals for the payment of money, enforced as informal contracts." Friedman v. Tappan Development Corp., supra, at p. 536; 1 Williston, Contracts (3d ed. 1957), § 140, pp. 611, 612. While the doctrine is now recognized "almost universally" in the charitable subscription cases, 1A Corbin, op. cit., § 198, p. 204; 1 Williston, op. cit., p. 609, § 140, it also enjoys a much wider application. Annotation 48 A.L.R.2d 1069, 1079-1087 (1950); Annotation 115 A.L.R. 152, 156 (1938); 1A Corbin, op. cit., §§ 193-209. For example, promissory estoppel has been applied to preclude reliance on the statute of limitations, Waugh v. Lennard, 69 Ariz. 214, 211 P.2d 806 (Sup. Ct. 1949); to avoid the statute of frauds, Alaska Airlines v. Stephenson, 217 F.2d 295, 15 Alaska 272 (9 Cir. 1954); to prevent foreclosure of a mortgage, Bank of Fairbanks v. Kaye, 227 F.2d 566, 16 Alaska 23 (9 Cir. 1955); to enforce a pension plan, West v. Hunt Foods, 101 Cal. App.2d 597, 225 P.2d 978 (D. Ct. App. 1951); to require the granting of a franchise, Chrysler Corporation v. Quimby, 1 Storey 264, 51 Del. 264, 144 A.2d 123, 885 (Sup. Ct. 1958); to protect creditors by requiring directors of a corporation to convey land to it, Berman v. Griggs, 145 Me. 258, 75 A.2d 365 (Sup. Jud. Ct. 1950); to enforce a release given without consideration, Fried v. Fisher, 328 Pa. 497, 196 A. 39, 115 A.L.R. 147 (Sup. Ct. 1938); and to enforce an easement *77 granted without consideration or a writing, Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 48 A.L.R.2d 1058 (Sup. Ct. 1954).
We see no reason why, given an appropriate factual situation, the doctrine would not apply in this State. Our view is reinforced by the ever expanding scope of liability designed to compensate those injured by wrongful conduct. See, e.g., Ekalo v. Constructive Service Corporation of America, 46 N.J. 82 (1965); Falzone v. Busch, 45 N.J. 559 (1965); Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965). As Justice Jacobs said in Schipper:
"The law should be based on current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast of the times. Ancient distinctions which make no sense in today's society and tend to discredit the law should be readily rejected. * * *" (at p. 90)
We see no difference between substantial reliance on a representation or promise as to current or past facts and as to future facts. It is only right and just that a promise a promisor knows will induce action of a substantial character be enforced if it is in fact relied on.
The authorities are not uniform in applying the doctrine of promissory estoppel to situations comparable to that before us. We believe the better line of authority applies the doctrine. N. Litterio & Co. v. Glassman Constr. Co., 115 U.S. App. D.C. 335, 319 F.2d 736 (D.C. Cir. 1963); Air Conditioning Co. of Hawaii v. Richards Constr. Co., 200 F. Supp. 167 (D. Hawaii 1963), affirmed on other grounds 318 F.2d 410 (9 Cir. 1963); Reynolds v. Texarkana Construction Company, 237 Ark. 583, 374 S.W.2d 818 (Sup. Ct. 1964); Drennan v. Star Paving Co., 51 Cal.2d 409, 333 P.2d 757 (Sup. Ct. 1958); Norcross v. Winters, 209 Cal. App.2d 207, 25 Cal. Rptr. 821 (D. Ct. App. 1962); Northwestern Engineering Co. v. Ellerman, 69 S.D. 397, 10 N.W.2d 879 (Sup. Ct. 1943); Union Tank Car Company v. Wheat Brothers, 15 Utah 2d 101, 387 P.2d 1000 (Sup. Ct. 1964). Cf., R.P. *78 Farnsworth & Co. v. Albert, 79 F. Supp. 27 (E.D. La. 1948), reversed 176 F.2d 198 (5 Cir. 1949); Harris v. Lillis, 24 So.2d 689 (La. Ct. App. 1946). Contra, James Baird Co. v. Gimbel Bros., Inc., 64 F.2d 344 (2 Cir. 1933); Southeastern Sales & Service Co. v. T.T. Watson, Inc., 172 So.2d 239 (Fla. D. Ct. App. 1965).
The Drennan case involved an oral bid by a subcontractor for paving work at a school project on which plaintiff general contractor was about to bid. Defendant's paving bid was the lowest, and the general contractor computed his own bid accordingly. Plaintiff was the successful bidder but the following day was informed by defendant it would not do the work at its bid price. The California Supreme Court, per Justice Traynor, applied the doctrine of promissory estoppel to prevent defendant's revocation of its bid, stating:
"When plaintiff used defendant's offer in computing his own bid, he bound himself to perform in reliance on defendant's terms. Though defendant did not bargain for this use of its bid neither did defendant make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that defendant submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest, and that it would be included by plaintiff in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater defendant's chance of getting the paving subcontract. Defendant had reason not only to expect plaintiff to rely on his bid but to want him to. Clearly defendant had a stake in plaintiff's reliance on its bid. Given this interest and the fact that plaintiff is bound by his own bid, it is only fair that plaintiff should have at least an opportunity to accept defendant's bid after the general contract has been awarded to him." (333 P.2d, at p. 760)
The South Dakota Supreme Court was confronted with a virtually identical set of facts in the Northwestern Engineering case. In applying promissory estoppel it stated,
"Obviously it would seem unjust and unfair, after appellant was declared the successful bidder and imposed with all the obligations of such, to allow respondents to then retract their promise and permit the effect of such retraction to fall upon the appellant." (10 N.W.2d, at p. 883)
*79 Similarly, in the Reynolds case a subcontractor submitted a bid for the electrical work for a school project on which the general contractor was about to bid. The general contractor relied on the subcontractor's bid. In applying promissory estoppel to prevent revocation the court held that,
"Justice demands that the loss resulting from the subcontractor's carelessness should fall upon him who was guilty of the error rather than upon the principal contractor who relied in good faith upon the offer that he received." (374 S.W.2d, at p. 820)
We agree.

III.
To successfully establish a cause of action based on promissory estoppel Gordon must prove that (1) it received a clear and definite offer from Coronis; (2) Coronis could expect reliance of a substantial nature; (3) actual reasonable reliance on Gordon's part, and (4) detriment. Restatement, Contracts, § 90; N. Litterio & Co. v. Glassman Constr. Co., supra, 319 F.2d, at p. 739.
The Law Division did not think promissory estoppel would apply in the situation sub judice. Therefore we reverse. We also remand since it is necessary to determine if the elements of a promissory estoppel case are present. They are essentially factual and inappropriate to a summary judgment. R.R. 4:58-3; Robbins v. Jersey City, 23 N.J. 229 (1957). Gordon must show the existence of an offer. The April 22 letter is subsequent in time to Gordon's bid to the Port Authority. It cannot furnish the basis for this suit since it would have been impossible for Gordon to have relied on it when making its bid. However, it is alleged that the letter merely confirmed prior oral agreements. The true facts must await a full hearing.
Similarly, Gordon must show that Coronis could reasonably expect Gordon to rely on the bid. This will depend on Coronis' actual knowledge or the custom and usage in the trade. N. Litterio & Co. v. Glassman Constr. Co., supra; *80 Hedden v. Lupinsky, 405 Pa. 609, 176 A.2d 406 (Sup. Ct. 1962). Gordon must also show actual reliance.[2]Norcross v. Winters, supra. And we note that if Coronis' bid was so low as to put Gordon on notice that it was erroneous it cannot claim reliance. Drennan v. Star Paving Co., supra; MacIsaac & Menke Co. v. Freeman, 194 Cal. App.2d 327, 15 Cal. Rptr. 48 (D. Ct. App. 1961); cf., Feldman v. Urban Commercial, Inc., 70 N.J. Super. 463 (Ch. Div. 1961). Finally, of course, detriment must be shown.
Reversed and remanded.
NOTES
[1] The Restatement does not use the term "promissory estoppel." It has been criticized as too broad. Professor Corbin approves of the Restatement's stating of the rule "in terms of action or forbearance in reliance on a promise." 1A Corbin, Contracts, § 204 (1963), cited with approval in Friedman v. Tappan Development Corp., 22 N.J. 523, 538 (1956). We use the term "promissory estoppel" for convenience.
[2] We do not consider whether the existence of section 2-205 of the Uniform Commercial Code precludes reliance on an offer not conforming to its provisions.