**VASTOLER, Soloman A., Appellant,**

v.

**AMERICAN CAN COMPANY, a corporation and the Annuity Board of the American Can Company Retirement Plan for Salaried Employees, Appellees.**

No. 82–5273.

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1982.

Decided Feb. 23, 1983.

David B. Avigdor (argued), Lampf, Lipkind, Prupis & Petigrow, West Orange, N.J., for appellant.

Warren J. Casey (argued), Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for appellees.

---

Before GIBBONS, HIGGINBOTHAM and BECKER, Circuit Judges.

**OPINION OF THE COURT**

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Appellant brought this action claiming that he was entitled to greater pension benefits than he was receiving from appellee's pension plan for employees. The issue in this underlying action is the proper period of service on which appellant's pension benefits were to be calculated. The district court granted appellee's motion for summary judgment, but because we find a genuine dispute as to material facts we will reverse and remand the case to the district court.

**I.**

Soloman A. Vastoler was employed by American Can Company for periods of years of varying duration from 1937 to his retirement at age 59 on December 31, 1978. Except for three years of military service, he worked as an hourly employee from 1937 to 1946, from 1947 to 1952 and from 1958 to 1963.

In April 1963 the Company promoted Vastoler from an hourly lithographer to a salaried supervisor. The company initiated the promotion, and Vastoler reluctantly accepted it. His acceptance was conditioned primarily on the Company's promise to give him full credit for his past service to the Company for the purposes of determining his pension benefits. Under the terms of the pension plan, his years of service prior to 1958 would not have counted. Nor would these years have counted towards his other fringe benefits. A secondary condition of acceptance was full credit for past service for the determination of Vastoler's other fringe benefits.

The difference between the monthly pension payments Vastoler is receiving and those he claims he is entitled to receive is significant. On the basis of his continuous service from 1958 his monthly benefit to age 62 would be $656.14; and after 62 it would decrease to $580.20 per month.

Based on continuous service from 1937 Vastoler's monthly benefit would be $875.23 from the time he retired. The difference in monthly payments is $219.09 to age 62 and $367.03 at and after age 62.

The Company denies that it promised Vastoler full credit for past service from 1937 to 1962 for purposes of his Salaried Retirement Plan. However, an intracompany memo from the plant manager, Joe Choborda, who negotiated the promotion with Vastoler supports Vastoler's testimony. In the memo requesting authorization to give Vastoler credit for his past service, the plant manager stated:

At the time we interviewed this employee for the promotion we discussed with him the various benefits, etc., in regard to becoming a salaried employee. Unfortunately, we miscalculated his accredited service and indicated to him that according to our records, he had sixteen (16) years of accredited service. We overlooked the fact that he had a break in service during the years 1953 to 1956, approximately four (4) years, which resulted that his true accredited service was only 5 years and 6 months. The fact that we committed ourselves to him as having sixteen (16) years of accredited service, entitled him to three (3) weeks vacation, and in another four (4) years, he would be receiving four (4) weeks vacation. We also discussed with him the Survivorship Benefit Program, to which he would be eligible in approximately nine (9) years.

Appendix (App.) at 467. The manager noted that "it was necessary that we [the company] sell him [Vastoler] on all the benefits because from a financial standpoint of view, initially, he [Vastoler] was not benefitting by this promotion ...." *Id.* The Company granted Vastoler credit for past service for all fringe benefits except his pension. The district court assumed "that the Company made the promise to Vastoler and that Vastoler was not informed that his service period for pension purposes ran from July 1958 and not March 1937." App. at 452. It nevertheless granted the Company's motion for summary judgment. Vastoler appeals from the district court's order

granting summary judgment to American Can Company.

## II.

The trial court may grant summary judgment if it determines from the pleadings and evidence that no genuine issue as to a material fact remains for trial. The scope of review of an order granting summary judgment under Rule 56 was explained in *Goodman v. Mead Johnson·& Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

> On review the appellate court is required to apply the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.

*Id.*

■ Vastoler based his original action on two claims. The first is that he is entitled, under the terms of the pension plan, to past service credit from 1937 rather than from 1958. The district court rejected this claim correctly noting that under the express terms of the agreement Vastoler's pre-1958 accredited service was cancelled when he resigned in 1952. App. 455. We affirm on this point. Vastoler's second claim is based on promissory estoppel. It is in regard to this claim of promissory estoppel on which we disagree with the district court and on this ground we will reverse. The district court phrased this promissory estoppel claim as follows:

> when he [Vastoler] was asked to transfer from an hourly to a supervisory position, Mr. ·Choborda promised that he would receive credit from 1937 and that, in reliance thereon, he altered his position to his detriment to such a degree that equity and good conscience make it imperative that the promise be honored in order to avoid obvious and manifest injustice.

*Id.* at 455. The court concluded that "the claim cannot stand because nothing at all has been shown to indicate such a disadvantage to him [Vastoler] by accepting the transfer as to make it imperative that the promise be adhered to in order to avoid obvious and manifest injustice." *Id.* at 456.

The district court's finding that Vastoler did not suffer sufficient detriment to require enforcement of the promise is based on financial advantages that accrued to Vastoler by virtue of his promotion. The court found that, except for his pension benefits, Vastoler received all of the fringe benefits accorded salaried employees on the basis of his 1937 starting date. Aside from his pension, his other salaried benefits were at least equal to those he enjoyed as an hourly employee and member of the Amalgamated Lithographers of America.

Vastoler also received additional benefits that he would not have received had he continued as an hourly employee. These additional benefits included the Expanded Employment Program that entitled him to thirteen full weeks of paid leave in addition to his regular vacation; participation in the Company's Stock Purchase Plan; better life insurance; $2,000 lump sum payment at retirement; company contributions to the Salaried Retirement Plan; higher compensation from 1963 to 1978; termination of the payment of union dues; retention and pay raises at a time when hourly employees were being laid off and plants closed. *Id.* at 457.

The court concluded that Vastoler's financial advantages for the fifteen years he served as a salaried supervisor exceeded the difference between the pension benefits based on his service from 1958 and the benefits he was promised based on his service from 1937. The court therefore found that there was a "complete absence of any detriment, let alone a substantial one . . . ." *Id.* at 458. We, however, are persuaded that there is a genuine issue of material fact as to whether Vastoler relied to his detriment on American Can Company's promise of granting full credit for his service since 1937.

## III.

■ The difficulty we have with the district court's decision is that it limits its evaluation of detriment to purely financial terms which are extraneous to the bargain entered into in April 1963 by Vastoler and American Can Company. When we examine the circumstances surrounding the agreement we find that a genuine issue of material fact exists concerning Vastoler's detrimental reliance upon the Company's promise of full credit for past service for the determination of his pension benefits.

The district court's reasoning regarding the issue of detrimental reliance is faulty in two respects. First, underlying its reasoning is the erroneous assumption that Vastoler would have remained at American Can Company as an hourly employee but for the Company's inducing him to accept a supervisory position. The record, however, fails to support such an assumption. The American job market is broader than American Can Company, and this was especially true during the great economic expansion of the 1960's. At three points in his testimony on deposition Vastoler asserted that he remained with American Can Company because of his pension benefits. App. at 74, 139, 163–64. Moreover, in his answer to interrogatory 20, *Id.* at 31, he stated that "[h]ad plaintiff known about the lower benefit he was to receive, he would have increased his contributions to his ALA pension plan to secure a better retirement income." It is therefore ironic that after Vastoler gave the Company fifteen years of his service as a salaried supervisor the Company now attempts to welch on its original promise and raises the claim that the employee would not have received greater income and fringe benefits if he had remained with the Company as an hourly employee.

The second error in the district court's reasoning involves an even more fundamental deficiency. It failed to consider the human dynamics and anxieties inherent in supervisory positions. All jobs are not the same, and work involves more than one's "daily bread" and the weekly paycheck.

Certain jobs have higher levels of stress and anxiety. Often, increased responsibilities torture the mind as well as the body. The different levels of stress associated with different jobs explains why some qualified people do not want to be President of Fortune 500 corporations, nominee for the Presidency of the United States, or foreman of their plants. Some privates do not want the decision-making burdens of majors and generals. Following Justice Frankfurter's admonition that "this Court should not be ignorant as judges of what we know as men [or women]," *Watts v. Indiana,* 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949), we find that the trial judge erred in failing to recognize that absorption of the stress and anxiety inherent in supervisory positions could be one of the factors that constitutes detrimental reliance.

A jury could certainly find that when Vastoler changed his position from an hourly worker responsible for his individual tasks to a salaried supervisor responsible for approximately fifty subordinate employees he was forced to absorb additional stress and emotional trauma. As a supervisor, he would have had the additional responsibility for assigning jobs to workers, disciplining workers, and perhaps recommending that some be fired or laid off. The stress and emotional trauma inherent in such a supervisory position cannot be measured in purely financial terms. Therefore, the presence of detrimental reliance in this case is a sufficiently disputed issue for the trier of fact that summary judgment cannot be granted to American Can Company.

Even if we look at purely financial considerations we find that Vastoler arguably demonstrated detrimental reliance. The Company conceded in 1963 that Vastoler did not improve himself financially when he changed his position from an hourly employee to a salaried supervisor. Vastoler testified that he did not want the promotion because he would be worse off financially. He testified that he told the plant manager: "You're not giving me anything. The only way I'll take this job, if you would give me

all my back time, which was 1937." *Id.* at 174. The record shows, therefore, that Vastoler accepted the promotion, a transfer that was apparently desired more by the Company than by Vastoler, in exchange for the full recognition of his past service for purposes of his pension and other fringe benefits. *Id.* at 197–98.

Any other benefits that may have subsequently accrued from his position as a salaried supervisor may not change the terms of that bargain. It is merely a matter of coincidence that over the years Vastoler's financial benefits may have equalled or bettered those he would have earned had he not accepted the promotion to supervisor. Reliance is measured by the terms of the agreement, not by benefits extraneous, albeit incidental, to the agreement. *See,* Restatement (Second) of Contracts §§ 90, 139 (1981). Vastoler evidently accepted a transfer in 1963 in return for the maximization of pension benefits to be paid to him during his retirement that began some fifteen years later. Whether the compensation he received during those intervening fifteen years was sufficient to substitute for the original promise so as to eliminate detriment is a question for the trier of fact.

Therefore, we find that the district court erred in concluding that Vastoler did not demonstrate substantial detriment. We will reverse the judgment of the district court that granted appellee's motion for summary judgment and remand these proceedings to the district court for trial.

BECKER, Circuit Judge, concurring:

Because the record contains evidence that Vastoler was disadvantaged by taking a supervisory position—evidence sufficient to create a triable issue of fact on the question of substantial detrimental reliance—I agree that the grant of summary judgment should be set aside.[1] I write separately, however, because I find myself in disagreement with the language or tenor of the majority opinion in three respects. First, I note my understanding that the majority, despite the strength of its characterization of appellee's past behavior (i.e., that appellee "welched" on its original promise to appellant), does not intend to intimate a view on the ultimate validity of appellant's arguments. We have taken those arguments to be true only for purposes of reviewing a grant of summary judgment. Second, I note my understanding that the language in the fifth paragraph in Part III of the majority's opinion is not to be construed as holding that the failure of appellee to award pension benefits based upon continuous service (the alleged promise upon which appellant sued) can itself be the substantial detriment required to trigger the doctrine of promissory estoppel. Third, while I agree with the majority that New Jersey law (which I understand to be applicable in this diversity case) probably permits a jury to find that the stress and anxiety of a supervisory position constitute a detriment sufficient to warrant application of the doctrine of promissory estoppel, I note my understanding that the existence of such stress or anxiety, if proven at trial, is but one factor for the jury to consider along with the relevant financial considerations in determining whether there was substantial detrimental reliance within the meaning of Restatement of Contracts § 90. *See Friedman v. Tappan Development Corp.,* 22 N.J. 523, 126 A.2d 646 (1956) (citing Restatement of Contracts § 90 (1932)); *Malaker Corp. Stockholders Protective Committee v. First Jersey National Bank,* 163 N.J.Super. 463, 395 A.2d 222 (App.Div. 1978); *E.A. Coronis Associates v. M. Gordon Construction Co.,* 90 N.J.Super. 69, 216 A.2d 246 (App.Div.1966) (citing Restatement of Contracts § 90).

With these qualifications, I join the opinion of the Court.

---

1. I rely particularly upon plaintiff's allegations: (1) that had he known about the lower benefit he was to receive he would have increased his contributions to his ALA pension plan to secure better retirement income; and (2) that he remained with American Can Company (and therefore abjured other employment possibilities) because of the promised pension benefits.