**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1200-23

ASDAL HOLDINGS, LLC,

      Plaintiff-Appellant,

v.

DOUGLAS MARTIN and
KRISTA DECKHUT,

      Defendants-Respondents,

and

JENNIFER MERCER,

      Plaintiff/Intervenor-
      Repondent,

v.

ASDAL HOLDINGS, LLC,

      Defendant-Appellant,

and

DOUGLAS MARTIN and
KRISTA DECKHUT,

Defendants-Respondents,

and

CALIFON BOROUGH,

Defendant/Intervenor-
Respondent.

_____

Submitted March 5, 2025 – Decided August 4, 2025

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Hunterdon County, Docket No. C-014017-22.

Williams Graffeo & Stern LLC, attorneys for appellant (Thomas M. Lenney and Stephen D. Santini, Jr., on the brief).

Wilhelm & Roemersma, PC, attorneys for respondents Douglas Martin and Krista Deckhut (Scott M. Wilhelm, on the brief).

John F. Rimmele, attorney for respondent Jennifer Mercer.

Woolson Anderson Peach, PC, attorney for respondent Califon Borough (Mark S. Anderson, on the brief).

PER CURIAM

Plaintiff Asdal Holdings, LLC appeals from the November 7, 2023 Chancery Division amended final judgment denying its request for specific

performance of a contract to purchase real property owned by defendants Douglas Martin and Krista Deckhut and other relief and dismissing its complaint with prejudice. We affirm.

I.

The following facts were found by the trial court after a two-day evidentiary hearing. Defendants owned real property identified in the tax records of intervenor defendant Califon Borough (Borough) as Block 6, Lot 27 and Lot 41 (the Property). Lot 41 was a unique parcel on which there was a historic train depot that had not been in operation for about sixty years. A funeral home previously operated by Deckhut's parents was located on Lot 27, which was adjacent to Lot 41. Both lots had frontage on Academy Street.

On March 11, 1981, Deckhut's father and Douglas D. Martin purchased the Property as tenants in common.[1] Deckhut inherited her father's interest in the Property on May 27, 2019. After the inheritance, defendants each owned a one-half interest in the Property.

Deckhut also owned adjacent real property identified in the Borough's tax records as Block 6, Lot 23 (residence) and Lot 24 (lawn) (collectively, the

---

[1] It is unclear if Douglas D. Martin is defendant Martin or a predecessor in interest in the Property.

A-1200-23

Deckhut Property). She resided in a single-family home on Lot 23 since 1978. The Deckhut Property did not have frontage on a public street. The only access to a public street from the Deckhut Property was a dirt and gravel road on Block 6, Lot 25, the owner of which was uncertain, to the property line of Lot 41.

At that point, the dirt and gravel road continued over a grassy section of Lot 41 to a point where one must either cross a paved parking lot on Lot 41 to access Academy Street, or enter adjoining Lot 22, an undeveloped parcel owned by intervenor plaintiff Jennifer Mercer, and cross Lot 22 to access Center Street. Center Street did not connect to the dirt and gravel road at the border of Lot 25. To cross from Lot 25 to Center Street across Lot 22 one had to traverse a grassy area with sewer grates and navigate around two utility poles. In addition, in 2012, Mercer installed a metal chain at the end of the paved portion of Center Street to prevent cars from turning around on Lot 22. Deckhut never crossed Lot 22 to access Center Street and always traveled over the paved parking lot on Lot 41 to access Academy Street.

In 2021, defendants decided to sell the Property. Deckhut thought Lot 41 was subject to an easement allowing access from the Deckhut Property across the grassy area and paved parking lot to Academy Street. Before she listed the

4

Property for sale, Deckhut conferred with an attorney, who confirmed Lot 41 was subject to such an easement.

Deckhut's understanding of the easement was reflected in the multiple listing service for the Property.  The listing noted the two lots comprising the Property were offered for sale together and the Property was subject to an easement in the form of a driveway.  Deckhut informed the realtor about the easement because without it she would lose access to Academy Street from her home.  Deckhut would never have agreed to relinquish the easement or consummate a sale of the Property that extinguished the easement.

Plaintiff was in the business of buying, developing, and renting residential and commercial real estate.  Plaintiff's principal, William Charles Asdal, was interested in purchasing the Property for restoration and development.  After Asdal toured the Property and conducted reasonable due diligence, plaintiff offered defendants $250,000 to purchase the Property.

On August 23, 2021, plaintiff and defendants executed a contract of sale. Plaintiff paid a $10,000 deposit, with the balance of the purchase price due after it received clear title to the Property.  Paragraph 11 of the contract provided in relevant part:

> This sale will be subject to utility and other easements
> and restrictions of record, if any, and such state of facts

5

as an accurate survey might disclose, provided such easement or restriction does not unreasonably limit the use of the Property. Generally, an easement is a right of a person other than the owner of property to use a portion of the property for a special purpose. . . . Buyer does not have to complete the purchase, however, if any easement, restriction or facts disclosed by an accurate survey would substantially interfere with the use of the Property for residential purposes.

Plaintiff retained a title company to conduct a title search and provide title insurance. Upon receipt of the title binder, defendants' attorney questioned an item suggesting there might be an easement on Lot 41 allowing access from the Deckhut Property to Center Street. There was no mention in the title binder of an easement on Lot 41 allowing access from the Deckhut Property to Academy Street.

On September 20, 2021, defendants' attorney sent a letter to the title company stating Deckhut wanted to retain access from the Deckhut Property over the Property to Academy Street. He offered to draft the appropriate documents to create such an easement if the title company was of the opinion Deckhut's claimed easement did not exist.

Plaintiff responded via letter from Asdal the same day. He stated:

I am aware that there are no described driveway easements overlaying lots 27 and 41 and in no case past Center Street for the cited "dirt drive." The prior surveys have been reviewed, tax maps reviewed, and

6

title work all showed no formal easements of record aligning with your clients['] request. No metes and bounds, named parties, or conferred rights, simply a reference to access a dirt drive up to Center Street.

As the buildings on each lot need septic installations, no additional easements are available to the sellers at this time.

I would be amenable to a six-month (renewable one time) license to temporarily pass across the existing parking lot to Academy Street until such time as Krista Deckhut (and her neighbor) can secure an easement over the Columbia Trail and onto Railroad Avenue or formalize their access to Center Street.

To reach Railroad Avenue from Lot 23, would have required Deckhut to cross Lot 25, Lot 26, and the Columbia Trail, a public walking path running parallel to Railroad Avenue. The record does not establish the owners of Lot 26 and the Columbia Trial, which appears to be located on the right of way for the railroad tracks once served by the depot on Lot 41. No party argued crossing Lot 25, Lot 26, and the Columbia Trail is a viable alternative to provide access to the Deckhut Property to Railroad Avenue.[2]

---

[2] Asdal's reference to Deckhut's neighbor appears to be an acknowledgment that a parcel adjacent to the Deckhut Property, on which there was a residence, also did not have frontage on a public street and the owner of that parcel used the same path as Deckhut over Lots 25 and 41 to access Academy Street. The owner of that parcel was not a party in the trial court.

A-1200-23

Plaintiff believed an easement over the parking lot on Lot 41 to Academy Street would degrade the value of the Property and render it useless because such an easement would interfere with plaintiff's ability to install a new septic system on the Property.

Deckhut rejected plaintiff's offer of a temporary license. She retained an expert, who opined there was "no question" Lot 41 was subject to an easement to permit access from the Deckhut Property to Academy Street. In reaching his opinion, the expert relied on a 1960 deed conveying Lot 41 from Central Railroad to a prior owner. The deed indicates the conveyance is subject to the "rights of the public, if any, in and to any driveways located on or crossing" Lot 41 and an accompanying survey depicting a driveway originating on Lot 23 crossing the paved parking lot on Lot 41.

After exchanging a series of correspondences, the parties to the contract reached an impasse with respect to the existence of the easement. Plaintiff ultimately took the position an easement permitted access from the Deckhut Property to Center Street across Lot 22, but no easement permitted access from the Deckhut Property to cross Lot 41 to access Academy Street. Plaintiff sent defendants a time-is-of-the-essence letter fixing a date and time for the closing of title.

A-1200-23

Defendants did not appear at the closing. Deckhut, who was aware of the time-is-of-the-essence letter, did not intend to sell the Property without securing an easement affording the Deckhut Property access to Academy Street by crossing Lot 41.

On May 17, 2022, plaintiff filed a complaint in the Chancery Division against defendants, alleging defendants' failure to close on the transfer of title to the Property constituted a breach of contract and of the implied covenant of good faith and fair dealing. Plaintiff sought specific performance of the contract, application of promissory estoppel to compel the transfer of title if the contract was invalid, compensatory and punitive damages, and attorney's fees and costs.

On July 25, 2022, defendants filed an answer and counterclaims against plaintiff. They alleged there was no meeting of the minds between plaintiff and defendants on an essential term of the contract and therefore no enforceable agreement to sell the Property. If, however, the court determined an enforceable contract existed, defendants sought a declaratory judgment that an easement existed permitting a right of access from the Deckhut Property across Lot 41 to Academy Street. Defendants also alleged plaintiff's failure to purchase the

9

Property subject to such an easement constituted a breach of contract for which they sought damages and attorney's fees.

The court granted Mercer leave to intervene as a plaintiff. On February 3, 2023, she filed a complaint seeking a declaratory judgment that no easement or right of access burdens Lot 22.

On February 11, 2023, defendants filed an answer to Mercer's complaint and Deckhut filed a counterclaim against Mercer alleging tortious interference with real property rights. Deckhut sought a declaration Lot 22 was subject to an easement permitting access from the Deckhut Property to Center Street, an injunction prohibiting Mercer from interfering with Deckhut's right to use that easement, damages, and attorney's fees. Defendants filed cross-claims against plaintiff for contribution and indemnification in the event they were found liable to Mercer for damages.

The court granted the Borough leave to intervene as a defendant. The Borough filed an answer requesting the court enter judgment protecting its interest in ensuring access to a public road for all properties in the Borough.

The following witnesses testified at the evidentiary hearing: Asdal, Deckhut, her land records expert Jacob Pence, Mercer, her land records expert Daniel May, and James W. Lance, an attorney who was familiar with the 1981

purchase of the Property and represented defendants in conjunction with the contract for the sale of the Property. The Chiefs of the Califon Fire Department and Califon First Aid Squad also testified about emergency access to the Deckhut Property.

On November 7, 2023, Judge Haekyoung Suh issued a comprehensive written decision finding plaintiff and defendants did not have a meeting of the minds with respect to an essential element of the sales contract: whether Lot 41 was burdened by an easement affording the Deckhut Properties access to Academy Street. Thus, the judge concluded no party could establish a breach of the contract or an entitlement to specific performance.

Judge Suh found credible Asdal's testimony regarding his interest in purchasing the Property, negotiating the contract, and the break-down in discussions with respect to the easement on Lot 41. The judge, however, found Asdal's credibility "faltered when testifying about damages sustained as a result of the alleged breach of contract by defendants." Judge Suh found plaintiff's reliance on "a single, self-serving spreadsheet without documents" to support his claim for $999,500 in damages "was weak and unpersuasive." She found Asdal's testimony with respect to the easement was not supported by expert testimony:

11

> While . . . Asdal had experience reviewing deeds, his reliance on his own interpretation of deeds and surveys was not convincing enough to establish the absence of an easement across Lot 41 to Academy Street, or to establish the existence of an easement from Lots 23, 24, 25 and 26 to Center Street.

On the other hand, Judge Suh found Deckhut's testimony "possessed all the hallmarks of credibility" and concluded she

> was entirely believable when she testified about her use of Lot 41 to access Academy Street, and that she would never have signed the contract of sale had she known she would lose the ability to cut across Lot 41 to Academy Street, the only public roadway she has ever used for ingress and egress to and from Lot 23.

The judge accepted the testimony of Lance and Pence, which supported Deckhut's claim the Deckhut Properties enjoyed an easement over Lot 41 to access Academy Street.

Judge Suh found Mercer credibly testified she never granted permission for anyone to traverse Lot 22 to access Center Street and accepted her testimony she placed a chain across the entrance to Lot 22 to block cars from turning around on her property at the end of the paved portion of Center Street. That testimony, the judge found, was corroborated by photographs. The judge accepted as "grounded in land records and believable," May's "unequivocal" opinion there was no easement in the chain of title for Lot 22.

12 A-1200-23

Judge Suh found that while the sales contract provided plaintiff's purchase of the Property was subject to existing easements, "[t]he scope of existing easements was not defined in the contract of sale, which led the parties to define the easement as they saw fit for their benefit." The judge concluded: "Each party formed their own definition of the easement, and they did not coincide with each other. Because there was no meeting of minds regarding the existence and scope of an easement across Lot 41, no contract of sale was formed."

The judge also found "[a]lternatively, even if this [c]ourt were to find that a contract of sale was formed, it is evident that both parties entered into the contract based on a mistaken belief as to a material fact underlying the terms of the agreement." That mistaken belief about the existence and scope of an easement on Lot 41, the judge concluded, negated a meeting of the minds and rescinded the contract. Judge Suh further concluded she need not decide whether Lot 41 is encumbered by an easement granting the Deckhut Properties access to Academy Street.

The judge found because plaintiff and defendants did not form a contract, no party was entitled to specific performance. In addition, the judge found plaintiff did not prove defendant breached the covenant of good faith and fair dealing by seeking to scuttle the contract in order, as it alleged, to sell the

13

Property at a higher price to a different purchaser.[3] The judge concluded Deckhut's interest in preserving access from her residence to Academy Street via Lot 41 to prevent the Deckhut Property from becoming landlocked was sincere and her refusal to close on the sale of the Property to plaintiff was not in bad faith.

Judge Suh also found plaintiff did not prove entitlement to promissory estoppel. Apart from making a $10,000 deposit that was returned to plaintiff, the judge found no detrimental reliance by plaintiff on defendants' actions. In addition, the judge found plaintiff failed to prove damages, finding some elements of its claim "unfounded" and "created out of whole cloth." The judge also concluded the absence of a contract negated defendants' counterclaim for breach of contract.

Finally, the judge found Mercer proved Lot 22 was not burdened by any easement. Judge Suh found Mercer's expert "meticulously traced the title on Lot 22 through each recorded deed from 1876 to March 2012 and found absolutely no reference to any easement or other access through Lot 22."

---

[3] Plaintiff produced evidence defendants received an offer to Purchase the property for $90,000 more than its offer.

A-1200-23

A November 7, 2023 amended judgment memorialized Judge Suh's decision:  (1) denying plaintiff's request to enforce the contract and for declaratory relief and damages; (2) dismissing plaintiff's complaint; (3) dismissing defendants' counterclaims; (4) declaring Lot 22 is unencumbered by any easement; and (5) dismissing Mercer's claims for damages.

This appeal followed.  Plaintiff argues the trial court erred because:  (1) the existence of a written contract and its plain terms negates a finding plaintiff and defendants did not have a meeting of the minds; (2) defendants' failure to raise the question of an easement to traverse Lot 41 during the three-day attorney-review period for the contract precludes consideration of their claim to an easement; (3) the record established defendants' bad faith breach of the contract when they refused to close on the sale of the Property; and (4) plaintiff proved entitlement to compel the sale of the Property through application of promissory estoppel.  Defendants, Mercer, and the Borough support the November 7, 2023 amended judgment.

## II.

"Our review of '[f]inal determinations made by the trial court sitting in a non-jury case . . . [is] limited and well-established.'"  Balducci v. Cige, 456 N.J. Super. 219, 233 (App. Div. 2018) (alterations in original) (quoting Seidman v.

Clifton Sav. Bank, 205 N.J. 150, 169 (2011)). The trial court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "[W]e do not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (alterations in the original) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016)).

A valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442-45 (2014). "A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 24-25 (1958)). To create an enforceable contract, the "parties [must] agree on essential terms . . . ." Ibid.

16

"A covenant of good faith and fair dealing is implied in every contract in New Jersey." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) (quoting Sons of Thunder, Inc v. Borden, Inc., 148 N.J. 396, 420 (1997)). Our Supreme Court has formulated the covenant as follows:

> In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; which means that in every contract there exists an implied covenant of good faith and fair dealing.
>
> [Id. at 245 (quoting Sons of Thunder, 148 N.J. at 421).]

To establish a claim for breach of the covenant, the claimant must allege conduct by the opposing party which "destroyed [the claimant]'s reasonable expectations and right to receive the fruits of the contract . . . ." Sons of Thunder, 148 N.J. at 425.

"Four separate factual elements must be proved prima facie to justify application of" promissory estoppel. Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978). The factors are:

> (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise[;] and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise.

17

[Ibid. (citing E.A. Coronis Assocs. v. M. Gordon Constr. Co., 90 N.J. Super. 69, 74-79 (App. Div. 1966)).]

Review of a court's application of an equitable doctrine is "limited" and we "will not substitute our judgment for that of the trial judge in the absence of a clear abuse of discretion." N.Y. Mortg. as Trustee v. Deely, 466 N.J. Super. 387, 397 (App. Div. 2021); see also Sears Mortg. Corp. v. Rose, 134 N.J. 326, 353-54 (1993) (applying the abuse of discretion standard when reviewing equitable remedies).

Having reviewed plaintiff's arguments in light of the record and applicable legal principles, we affirm the November 7, 2023 amended judgment for the reasons stated by Judge Suh in her thoughtful and well-reasoned written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1200-23