Jackie WOODS, Loren Dyson, Marvin Averett, Julie Brown, John Fogarty, Kim Fecteau, Pam Angerhofer, Plaintiffs–Appellants,

v.

NATIONAL MEDICAL CARE, INC., a Delaware Corporation, d/b/a Fresenius Medical Care North America, Defendant–Appellee.

No. 01–2056.

United States Court of Appeals, Tenth Circuit.

Dec. 11, 2001.

Before BRISCOE and MURPHY, Circuit Judges, and OBERDORFER, District Judge.*

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of the District of Columbia, sitting by designation.

## ORDER AND JUDGMENT [**]

OBERDORFER, District Judge.

Seven plaintiffs appeal the district court's grant of summary judgment to their former employer, National Medical Care, d/b/a Fresenius Medical Care, North America ("Fresenius"), on their various common-law contract and tort claims. Fresenius sold the plaintiffs' division to a company that is not a party to this appeal, Home Medical of America, Inc. ("Home Medical"), with which the plaintiffs all accepted jobs. The plaintiffs assert that they were entitled to receive certain bonuses from Fresenius on the basis of oral representations made to them by Fresenius's management, despite an express provision contained in the documentation creating those bonuses that precluded award of them to eligible employees who accepted "comparable employment" with the company that purchased their division. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

### I.

### A.

The following materials facts are undisputed. The plaintiffs were managers in Fresenius's home healthcare division, employed at various offices throughout the country. In late 1997, Fresenius was in the process of selling this division, and in December 1997 it sent each plaintiff a letter stating that he or she was being included in the "Homecare Special Retention Program." This plan, the letter advised, would provide each plaintiff "with the opportunity for bonus compensation for remaining with the company through a 'change in control' date," referring to the prospective sale of the division.

The letter set forth a two-part bonus structure, divided into a "minimum bonus" and an "additional bonus." According to the letter, a manager could earn a "minimum bonus" if no change of control occurred before December 31, 1998 and the company met certain performance goals. The letter further stated that a manager could earn an "additional bonus," falling between a "threshold bonus" and a "maximum bonus," if the sale of the division was completed in 1998, the sales price was within a targeted range, and Fresenius retained less than twenty-percent ownership. The exact amounts of these bonuses varied for each manager and were stated in each letter.

Attached to this letter was a document—referenced twice in the letter—entitled "1997–8 Homecare Special Retention Program." This attachment indicated that the purpose of the program was "[t]o provide an incentive to stay with the company through the date of the sale and maintain revenue and EBITDA [earnings before interest, taxes, depreciation, and amortization] objectives in order to maximize the potential sales price of the division." The attachment stated that a participant in the program would receive a minimum bonus if the division met certain revenue targets, a "change of control" occurred, and the participant remained employed through the earlier of the change-of-control date or December 31, 1998. The attachment further stated that a participant would receive an additional bonus if the sale of the division occurred in 1998 and the sales price was within a targeted range.

While the attachment did not include any limitations on the applicability of the retention program, the letter that accom-

[**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citations of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

panied it stated five separate circumstances under which the program would not apply. These included a manager's "[a]cceptance of comparable employment with the buyer/joint venture partner or with another unit of the company."[1]

Fresenius sold its home healthcare division to Home Medical, effective July 29, 1998. All of the plaintiffs accepted jobs with Home Medical around this time, although none of them remain employed there. None of the plaintiffs received the additional bonuses described in the December 1997 letter and attachment, which prompted this lawsuit.[2]

### B.

Fresenius states that it did not pay the additional bonuses because the plaintiffs breached an express term of the retention program by accepting comparable employment with the buyer, Home Medical. The plaintiffs' lawsuit is premised on their belief that this limitation did not apply because certain members of Fresenius's management, throughout the first six months of 1998, orally promised the plaintiffs that they would receive additional bonuses and did not reiterate any limitations. These alleged oral representations, the plaintiffs assert, thus modified—that is, nullified—the express limitations concerning the retention program's applicability. The plaintiffs' evidence in this regard comes in the form of individual affidavits by each plaintiff containing generalized descriptions of the alleged oral statements. For example, one affidavit states, "At no point was it stated that if we were retained, we would not be eligible for the Special Retention Program." Jt.App. at 125 (Woods Aff. ¶ 8). That affidavit also states, "The representations of management figures was [sic] quite clear to me-if the company had good sales and profits, we would receive bonuses at the time of the sale." *Id.* (Woods Aff. ¶ 9).

These alleged oral representations are the hooks on which the plaintiffs hang numerous common-law contract and tort claims supporting their asserted entitlement to the additional bonuses. Specifically, the plaintiffs assert that they are entitled to the additional bonuses on the basis of any of the following theories: breach of an express contract; implied contract; breach of an implied covenant of good faith and fair dealing; promissory estoppel; and fraud.[3]

The district court granted Fresenius's motion for summary judgment on all of these claims.[4] The court first concluded that the December 1997 letter and its attachment constituted a fully integrated, unambiguous contract. The court stated that the absence of an express integration clause from both documents did not alter

---

1. The other circumstances were: "Voluntary resignation (including retirement) before the date identified as your severance date as determined by management;" "Refusal to accept comparable employment with the buyer/joint venture partner or with another unit of the company in an equivalent job at no reduction in base pay and at a location which does not require an unreasonable commute from your current residence;" "Disclosure of the contents of this letter;" and "Termination for cause."

2. The parties seem to dispute whether the plaintiffs received minimum bonuses. In

light of our holding that the plaintiffs breached an express term of the agreement that created the retention program, we need not address this issue.

3. Although Plaintiff Woods separately asserted a claim of bad faith breach of contract, the district court denied that claim and Woods does not appeal it.

4. The parties agreed that all of the relevant acts occurred in Massachusetts and that Massachusetts law thus controlled. The district court therefore conducted its analysis pursuant to Massachusetts law, as do we.

this analysis because the language of the documentation and the surrounding circumstances suggested a final and complete expression of the parties' intent. Jt.App. at 17–18 (Order at 7–8 (citing *Coll v. PB Diagnostic Sys., Inc.,* 50 F.3d 1115, 1122–23 (1st Cir.1995))). The district court also determined that the mere fact that the attachment did not repeat the circumstances under which the retention program would not apply did not create any ambiguity, because the limitation was clearly stated in the letter. *Id.* at 18 (Order at 8).

The district court further concluded that the alleged oral representations did not modify the written terms. Given its finding that the letter and attachment were fully integrated and unambiguous, the court ruled that the parol evidence rule barred the admission of any prior or contemporaneous evidence contradicting those terms. *Id.* at 17 (Order at 7). While recognizing that the parol evidence rule does not apply to subsequent oral modifications, the court ruled that the alleged oral statements here—which the court characterized as "management's cheerleading"—did not modify the written terms of the retention program merely because they did not restate all of those terms. *Id.* at 18 (Order at 8). The district court therefore concluded that the plaintiffs' evidence was insufficient to create a genuine issue of material fact.

Having ruled that the terms of the retention program were limited to those stated in the December 1997 letter and its attachment, the district court found that each of the plaintiffs had accepted comparable employment with Home Medical and thus breached an express term, precluding them from receiving the additional bonuses. The court also concluded that the plaintiffs could not satisfy the elements for their claims of breach of an implied covenant of good faith and fair dealing, promissory estoppel, and fraud. The court did

not address the plaintiffs' claim for recovery based on an implied contract. Accordingly, the district court granted Fresenius's summary judgment motion on all of the plaintiffs' claims.

## II.

We review the district court's order *de novo. See Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (citation omitted). While we examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party, "the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (citations omitted).

## III.

■ Applying these standards, we agree with the district court's disposition of all of the plaintiffs' claims and affirm all of its conclusions. As the district court noted, the interpretation of a contract is a question of law for the court, and a contract presents an issue of fact for a jury only if it is ambiguous. Jt.App. at 17 (Order at 7 (citing *Coll,* 50 F.3d at 1122)). Where the contract is unambiguous, it is to be enforced according to its terms. *Coll,* 50 F.3d at 1122.

The texts of the December 1997 letter and its attachment, as well as the circumstances surrounding their distribution, unambiguously indicate that the two documents together constitute a fully integrated, express contract regarding the retention program. The two documents are clearly meant to be read together. Indeed, the letter twice references the attachment, and the attachment indicates that the bonuses will be communicated by letter. Furthermore, the documents were

distributed as a single package. The fact that the attachment does not repeat every term stated in the letter does not compromise the unambiguous statement of the program's limitations contained in the letter.

We likewise agree with the district court that the plaintiffs' evidentiary proffer regarding the alleged oral representations by Fresenius's management does not create a genuine issue of material fact concerning the terms of the retention program, and thus the terms contained in the documentation of the bonus program were not orally modified. The portions of the plaintiffs' affidavits addressing the limitation involving the acceptance of comparable employment are framed in the negative. For example, one affidavit states, "At no point was it stated that if we were retained, we would not be eligible for the Special Retention Program." Jt.App. at 125 (Woods Aff. ¶ 8); *see also id.* ("[I]t was never represented that these bonuses would not be paid.") (Woods Aff. ¶ 12). In fact, it *was* stated—in clear and unambiguous terms in the December 1997 letter—that any manager who was retained by Home Medical in a comparable position would lose his or her eligibility to participate in the retention program. That Fresenius's management did not repeat this limitation orally is of no consequence here and does not revive the plaintiffs' forfeited claims to the additional bonuses.

Having concluded that the retention program contained an express term prohibiting the acceptance of comparable employment with Home Medical, we turn to the narrower issue of whether the plaintiffs' jobs with Home Medical were "comparable" to their former jobs with Fresenius. In short, we agree with the district court that none of the plaintiffs has created a

genuine issue of material fact concerning whether they actually breached this term. The district court found that six of the seven plaintiffs "produced no evidence suggesting that their Home Medical employment was not comparable to that with Defendant." Jt.App. at 18 (Order at 8). The plaintiffs have not remedied this evidentiary infirmity on appeal.

One plaintiff, Pam Angerhofer, addressed the comparability of employment in her affidavit. The affidavit stated, "I was offered a position with Home Medical, as a Regional Director of Sales. The position was not comparable, and involved significantly decreased commissions." *Id.* at 139 (Angerhofer Aff. ¶ 9). Angerhofer's conclusory statement that her new position was *not* comparable does not create a genuine issue of material fact. *See BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.,* 194 F.3d 1089, 1101 (10th Cir.1999) ("While an affidavit is certainly an appropriate vehicle to establish a fact for summary judgment purposes, the affidavit must set forth facts, not conclusory statements."). The only specific term of her employment with Home Medical that Angerhofer mentions in her affidavit is the commissions component of her salary, which she claims was "significantly decreased." Without deciding whether this difference alone could render her employment "non-comparable," we believe that in light of the record evidence, Angerhofer has not created a triable issue regarding comparability of employment. Angerhofer's interrogatory responses indicate that her job title and compensation did not change with her employer.[5] As the district court noted, Angerhofer "does not indicate that her function, as opposed to title, changed, nor does she indicate that

---

**5.** Angerhofer stated that she held the position of "Regional Sales Manager" with Fresenius and with Home Medical, and that her "[a]n-

nual wages when with Fresenius and with Home Medical of America up to Jan. 2000 were $84,000.00 per year." Jt.App. at 166.

her compensation was reduced." *Id.* at 19 (Order at 9). Angerhofer does not cure this deficiency on appeal. Thus, Angerhofer's affidavit, when considered alongside her interrogatory responses, does not create a genuine issue of material fact. In any event, we are persuaded that no reasonable trier of fact would find that her job with Home Medical was not "comparable" to her job with Fresenius. We therefore affirm the district court's grant of summary judgment to Fresenius on the plaintiffs' claim of breach of an express contract.[6]

■ We also agree with the district court's grant of summary judgment to Fresenius on the plaintiffs' other claims, and we discuss each of these—briefly—in turn. Fresenius did not breach the implied covenant of good faith and fair dealing when it refused to pay the plaintiffs additional bonuses. The implied covenant of good faith and fair dealing provides that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1257 (1977) (citations and internal quotation marks omitted). The district court determined, and we agree, that even assuming such an implied covenant applied here, Fresenius's conduct did not deprive the plaintiffs of any benefit to which they would have been otherwise entitled, given the express terms of the retention program. There is no evidence that Fresenius committed some act to cause the plaintiffs to seek, or to facilitate their acceptance of, comparable

employment with Home Medical and thus violate the terms of the retention program. Nor is there any evidence that Fresenius encouraged Home Medical to retain the plaintiffs for a short period of time in order to absolve itself of paying additional bonuses. Accordingly, the district court's ruling on this issue is affirmed.

■ Nor can the plaintiffs recover additional bonuses on the basis of promissory estoppel. " 'The theory of promissory estoppel ... permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.' " *Coll*, 50 F.3d at 1124 n. 4 (quoting *Loranger Constr. Corp. v. E.F. Hauserman Co.*, 6 Mass.App.Ct. 152, 374 N.E.2d 306, 308 (Mass.App.Ct.1978)). The party invoking promissory estoppel must have reasonably relied on the alleged promise to its detriment. *Id.* at 1124. We agree with the district court that the plaintiffs cannot satisfy these elements. Even assuming that Fresenius's management made oral statements that deviated from the written terms of the retention program, any reliance on them could not have been reasonable given that they were clearly contradicted in writing. Furthermore, despite their conclusory assertion to the contrary, the plaintiffs have presented no evidence that they relied on such representations to their detriment. For example, while they state that they remained employed by Fresenius during the sale period and did not seek other

**6.** As an alternative to this argument, the plaintiffs contend that there was no enforceable contract here and that they are entitled to financial recovery based on a theory of implied contract. The district court did not address this argument in light of its conclusion that the plaintiffs breached an enforceable contract, and our affirmance in that regard similarly obviates our need to address the issue.

employment, the plaintiffs do not indicate that they forfeited specific employment opportunities in expectation of additional bonuses from Fresenius. We therefore affirm the district court on this issue.

■ Finally, we reject the plaintiffs' contention that Fresenius's conduct in this case amounted to fraud. "To recover under a fraud theory, a plaintiff must prove 'that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.'" *Sands v. Ridefilm Corp.*, 212 F.3d 657, 663 (1st Cir.2000) (quoting *Barrett Assocs., Inc. v. Aronson*, 346 Mass. 150, 190 N.E.2d 867, 868 (1963)). Consistent with the inadequacies attending their other claims, the plaintiffs fail to present any evidence in support of their fraud claim. They repeat the elements for a fraud claim and assert, again in a conclusory fashion, that they are satisfied here. We agree with the district court's statement that "[g]iven the letters containing the express terms of when the plan applied, Plaintiffs have not provided any evidence suggesting that management's discussion of the plan, without restating the conditions under which it applied, was false, let alone knowingly false." Jt.App. at 21 (Order at 11).

### IV.

For the foregoing reasons, the district court's order granting summary judgment to Fresenius is affirmed in full.

AFFIRMED.